## CITY OF CHICAGO *v.* HUTCHINSON and others.

*(Circuit Court, N. D. Illinois.* January 26, 1882.)

1. REMOVAL OF CAUSE—SEPARATE CONTROVERSY.

In a suit brought by a city against known and unknown owners, for the condemnation of land for the opening of a street, where the only controversy is as to the value of the land, where a non-resident voluntarily appears as one of the unknown owners, *held*, that as to him it is a controversy wholly between himself and the city, and that he has the right to remove the cause as to himself into the federal court, and that the cause may proceed as to the other defendants in the state court.

2. SAME—APPLICATION IN TIME.

Where a party never was in court in person in the case until he voluntarily came in by petition, and the day following his appearance made application for removal of the cause into the federal court, and the hearing of the cause had not commenced, *held*, that the application was in time.

*Frank Adams*, City Atty., *Mr. Coburn, Mr. High*, and *Mr. Winston*, for plaintiff.

*Edsall & Hawley*, for defendants.

DRUMMOND, J. By an ordinance of the city council of Chicago, passed March 16, 1882, Dearborn street was directed to be opened from the south line of Jackson street to the north line of Taylor street, to the width of 80 feet, and on the twenty-fourth of March, 1882, a petition was filed in the superior court of Cook county, by the city attorney, for the condemnation of the land and lots necessary to be taken in order to have the street opened as provided by the ordinance. The petition required about 200 lots, or parts of lots, to be condemned, and comprehended, of course, a very large number of owners, about 40 of whom were named, the remainder being described as "unknown;" and in conformity with the statute provided in such cases, this fact was shown, and publication of the application was made, and all parties in interest required to come into court and be heard as to their claims. A summons issued to the persons named, returnable on the first Monday of May then next ensuing, and was returned served on many of them, who appeared in answer to the same.

It is claimed on the part of the city that by the service of the summons thus issued and served, and by the publication made in conformity with the statute as to unknown owners, all the defendants who were the owners of the property were in court and subject to its action at the June term, 1882. But nothing seems to have been done towards an immediate hearing of the case until the seventh

day of December, 1882, when, on the application of the city attorney, the court ordered that "this cause be and the same is hereby set down for trial for Monday next." On the second day of January, 1883, before the trial of the cause, Jane E. Martin, a citizen of Berrien county, in the state of Michigan, filed an affidavit, stating that she was the owner of part of one of the lots sought to be condemned, and prayed to be made a party to the suit, stating that she had no knowledge of the application until that time. With the consent of the city attorney, and by the order of the state court, she was then made a party defendant. On the third day of January, she filed a petition in the court for the removal of the cause to this court, under the act of congress of 1875, and filed the requisite bond. On the 6th the court refused the application for the removal of the case, for the reason that the proceeding connected with the extension and opening of Dearborn street did not present, as to her, a controversy wholly between citizens of different states, and which could be fully determined as between them; and for the further reason that the application for removal came too late, as not being filed before or at the term at which the cause or proceeding could be first tried. Under these circumstances she asks leave to file a transcript of the case in this court and to have it docketed. This application is opposed by the city because the case is not within the terms of the act of congress authorizing the removal of cases from the state to the federal court.

The petitioner, in her application for removal of the cause, stated that she was then, and had been from a time prior to the commencement of the proceedings in the state court, continuously a citizen of the state of Michigan. She did not then state, nor does it appear, when she became the owner of the part of the lot which is sought to be condemned, further than at the time she applied to become a party defendant, she says "that she is the owner of the south 24 7-10 feet of lot 16 of block 133 of school-section addition to Chicago." Her application was made to the court to become a party as one of the numerous defendants called "unknown" in the petition and other proceedings in the cause. The statute of the state under which the application was made by the city for the condemnation of the property in this case, requires that a jury shall be impaneled to ascertain the compensation to be paid to the owners, and declares: "If any defendant or party in interest shall demand, or the court shall deem it proper, separate juries may be impaneled as to the compensation or damages to be paid to any one or more of such defendants or parties

in interest." In this case the ordinance directing the opening of the street provided that the cost thereof should be paid by special assessment levied upon the property benefited thereby, to the amount that the same might be legally assessed therefor, and that the remainder of the cost should be paid by general taxation. Chapter 24 of the Revised Statutes, art. 9, § 133, and the following sections, declare how the special assessment shall be made under such circumstances, and how the money shall be raised and paid; and section 167 provides for a supplemental petition to be filed to assess the benefits to the owners by the proposed improvements in condemnation cases.

It will be seen, from the foregoing statement of facts, that there was but one petition filed by the city, which covered a series of lots lying upon one street. It, of course, affected the interest of every separate owner of the property to be condemned, and, in one aspect of the case, the controversy which he might have with the city was one in which the other owners were not directly interested. The question as to him was what was the value of his property which was to be appropriated for the use of the street. At the same time, in another aspect of the case, it is said the proceedings were more or less united, and in making the special assessments which might be necessary to pay in part for the opening of the street, the interests of adjoining lots were more or less connected together. It is in this view of the case that it is contended, on the part of the city, that it is not such a suit or such a controversy as is referred to in the second section of the act of 1875.

In *Boom Co.* v. *Patterson,* 98 U. S. 403, the supreme court of the United States held, where an application was made by the company to condemn the land of Patterson for its uses under the law of Minnesota, the case was subject to removal from the state to the federal court under the act of 1875. In that case, commissioners in the first instance appraised the value of the land, there being only *one* owner. Under the law the case then went to the district court of the state, and the owner of the land, as a citizen of another state, made the application for removal, which was sustained by the supreme court of the United States. This case, of course, decides the general question in favor of the jurisdiction of the federal court on an application for removal in a condemnation proceeding. In other words, that it is the kind of controversy referred to in the act of 1875, which, under the circumstances therein named, will authorize the removal of the cause; and, if this case is in principle like that as to the subject-matter of the controversy, then it is, under that decision, removable.

The language of the second section of that statute is "that one or more of the plaintiffs or defendants actually interested in such controversy may remove said suit to the circuit court of the United States for the proper district." A condemnation proceeding, as such, is, under the decision just referred to, such a suit as can be removed. Is this such a suit?

We have seen that it is commenced by a petition of the city. The city, a corporation of Illinois, is the sole plaintiff and actor in the case. All the property-owners of different lots, or those interested therein, are defendants—expressly so called in the statute. A summons is to issue and be served upon them "as in cases in chancery." As to the unknown defendants, publication is to be made containing a notice of the pendency of the "proceeding," the parties thereto, and the title of the court; and then the statute declares that such notices so given by publication shall be sufficient to authorize the court to hear and determine the "suit." And upon the return of the summons, and at the time fixed by the court, a jury is to be impaneled as already stated. Now, the question is, whether, as this is an application for the condemnation of the property of different owners, *it is a suit* within the meaning of the act of congress, and as such is removable, notwithstanding the interests of the respective owners named as defendants are all distinct as to the several parcels of land which they own. There can be no doubt it is a suit of some kind, known as such in law.

This being an application made by one of the numerous defendants, who, as known or unknown, were named in the summons, and some of whom afterwards appeared in the case by being made parties, the question arises whether, within the meaning of the second section of the act of 1875, there was a controversy which was wholly between the applicant and the city, which could be fully determined as between them. If that were so, then, within the express terms of the statute, she had the right to have the controversy and her suit removed. No question is made about her interest in the property. The only controversy between the city and herself is as to the value of the land, and it follows that it is a controversy wholly between them, and when the value of the land is ascertained by a jury, and then followed by proper action on the part of the court making the verdict of the jury effective, it has been fully determined as between them. It is difficult to imagine a case where different controversies may be brought into a cause and become the matter of judicial investigation and determination, where the interest which a particular

person may have in one of the controversies is more clearly ascertainable and separable than in this case.

But it is insisted on the part of the city, and such was the opinion of the state court, that the application was made too late. Under the third section of the act of 1875 a petition for removal must be filed in the state court before or at the term at which the case could be first tried, and before the trial thereof, and it is claimed that the cause could have been tried as early as June, 1882, and it is not controverted but that there were several terms of the state court intervening between the return of the summons and the time when the application was made for removal, although the case was not set down for hearing by the court until December, 1882. If she had been named as a defendant in the summons, and had been served with process, and brought into court the requisite time before the June term, then, perhaps, if she had not made her application at that term, it might, as to her, have been too late. But she never was in court in her own person until she voluntarily came by petition and asked to be made a defendant, on the second day of January. On the following day she filed her application for removal. She states, and no controversy is made upon that point, that she had no knowledge of the institution of the proceeding for condemnation until the time that she filed her petition to be made a party. If, therefore, she is precluded from exercising the right of removal under the facts stated, she is deprived of a right which was clearly intended to be conferred upon her by the act of 1875. If, while she was an unknown defendant, the cause had proceeded to trial before a jury to ascertain the compensation which should be paid to the respective owners, possibly it would have been too late. But it is not necessary in this case to decide that question, because the hearing had not commenced before the state court when the application for removal was made; and the view taken by the federal courts has been that a party ought not to be deprived of the right given by the law before he has had an opportunity or the power of presenting his petition for removal; and it is clear, from the facts already stated, that she made her application with reasonable diligence as soon as she appeared in court.

In *Harter* v. *Kernochan*, 103 U. S. 562, a decree had been rendered by the state court against a party as an unknown defendant under the statute of the state, who, exercising the right given by the law, came in and had the decree opened, which being done, he made an application for the removal of the cause to the federal court, and the supreme court of the United States decided, on the ground that this was the

first time he could apply for removal, that it was properly transferred to the federal court.

In *Wehl* v. *Wald*, 17 Blatchf. 342, a suit was brought in September, 1878, in a state court of New York, against the defendant. In April, 1879, the plaintiff amended his complaint and demanded judgment against another defendant not originally named in the case. This defendant put in an answer in May, 1879, and afterwards presented a petition to the state court for the removal of the cause, and that was held no valid objection to the application.

In *Burdick* v. *Peterson*, 2 McCrary, 135, [S. C. 6 FED. REP. 480,] an ejectment was brought in February, 1876, these being the only parties. The case was continued by the state court at several terms, and in October, 1877, one Tollman intervened in the case by petition as the owner in fee-simple of the land in controversy, and was made defendant in place of the original defendant, and at the same time he filed a petition for the removal of the cause; and it was considered no valid objection, the application being made the first time that it could be made by him.

Undoubtedly this is a proceeding *in rem*, but one in which the owners of the *res* are interested and have the right to be heard, both as to the condemnation itself and as to the compensation which shall be paid if the land is condemned; and when the owner of the *res* appears in court, having been sued as a person unknown, then it becomes like other controversies between parties, the questions being whether the property can be taken for public use, and if so, for how much. And if when he thus appears in court, and at once makes application for the removal of the suit under the act of congress, the right to removal is denied, then he is deprived of the privilege which law intended to confer on him.

I cannot doubt that under the facts and circumstances of this case the applicant had the right to remove the cause; and I therefore think the petition was filed in proper time, within the meaning of the third section of the act of 1875.

———

(January 29, 1883.)

The point whether or not, under the ruling which the court made the other day, the transfer of the controversy between the city and Jane E. Martin would bring here all the other controversies between the city and the various defendants and owners of the different lots

sought to be condemned, was argued by the counsel of the respective parties before the district and circuit judge, and that question is now to be decided. In the course of the argument, however, upon that question, the other points which were decided by the court were to some extent reargued, and it seems to be the desire of the counsel for the city that those points should be reconsidered by the court. They have been, and a consultation has taken place between the district judge and myself upon those two questions, and I may say that we neither of us have any doubt upon this: That the application was made by Jane E. Martin for the removal of the cause in time. We think that under the rulings of the supreme court of the United States no other conclusion can be reached. She appeared before there was any trial or hearing of the cause, for the first time, having been before an unknown defendant. As soon as she appeared and was made a party, she made her application for removal, and I can only repeat that to deprive her of the right of removal, provided it is a cause that can be removed, simply because she then for the first time made her application, would be in effect to render nugatory the provision of the act of congress, and subject it to the legislation of the states.

Upon the other point the same degree of confidence has not been felt, but our conclusion is the same as that announced by the circuit judge last week: that this is a suit, as between the city and Jane E. Martin, which could be removed. The principal argument of the counsel of the city is that after the verdict of the jury and the decision of the court as to the compensation which is to be paid, other questions may arise in the cause; that the statute provides for an application by supplemental petition in the same cause upon which action can be taken; but it will be recollected that at the time she made her application there was no question of that kind made in the state court. The only controversy—if we concede, as we must, I suppose, that this property was subject to condemnation—was as to the compensation which was to be paid to her. That was the only question which could come before the jury, and the only one on which the court could be called upon to render a judgment or decree. It might be, as between her and the city, no other controversy would ever arise. She might agree, perhaps, to the amount of the assessment and benefits that should be set off, so far as she was concerned, for the opening of the street. That was matter remaining in the future, and whether there would ever be a controversy or not we cannot absolutely say. We have no judicial notice of the fact that

there is to be any controversy beyond the controversy as to the compensation that should be paid.

If it be admitted there are difficulties connected with the decision of the case either way,—the removal of the case or refusing it,—we cannot see how, consistently with the decision of the supreme court of the United States in *Boom Co.* v. *Patterson*, if this is one single controversy between her and the city, which can be fully determined as between them, how we can deny the right of removal. It was conceded by the counsel of the city that if this were only one lot, or one block, or howsoever large a piece of property it might be, which was owned by a single individual, or owned jointly by several, there could be no question of the right of removal under the decision of the supreme court. That being so, we do not see how the fact that two or more lots being joined in the application for condemnation can make any difference in the principle. So that those two questions remain as previously decided.

I come now to the effect of the removal of the case or suit as between her and the city. Does it bring with it all the other different controversies in the case? We have to concede that in one sense this is a suit between the city and all the different defendants, known and unknown, named. But one petition is filed; but one summons is issued. That summons is served upon all who can be reached. There is but one publication, and, when this is accomplished, it is conceded that the court is empowered to act. It is, then, in one sense, a suit between the city and all those different defendants, both known and unknown; that is to say, it is nominally a suit, but in fact and in substance, as to the question which was at that time to be decided by the court, there was a series of suits and a separate and distinct suit between the city and each owner of the lots sought to be condemned. As a matter of convenience and practice, but one petition and one summons are issued, but the controversies between the city and the various parties are distinct and separate.

The verdict of the jury was to be separate and distinct in each case. The judgment of the court was to be separate and distinct in each case. As I stated before, as to Jane E. Martin, she had no controversy with the other parties. Her controversy was alone with the city; and whatever might be the result as between them, it did not so affect the controversy between her and the city as to make it joint in any legal sense; no further than that the parties have been brought into court by one petition, and one summons has issued upon it.

In taking this view of the case I concede we have, to some extent, to qualify the general principle laid down by the supreme court of the United States in the case that went up from Minnesota, and which has been so fully argued by the counsel. *Barney* v. *Latham*, 103 U. S. 205. In that case there were several controversies between the parties, and the supreme court of the United States held that did not deprive the court of jurisdiction, and did not prevent the various controversies in the case from being brought into the federal court, when application was made for removal by one of the parties to a separate controversy. All I can say about that is, that to some extent the various questions in that case were blended together, although separate and distinct. But it is clear, I think, that this kind of a case was not in the mind of the supreme court when it made that decision, and if it had been, it would have modified the language, or the principle would not have been stated in such broad terms as are contained in the opinion of the court.

The condemnation proceeding by the city is something unique and unlike an ordinary case at law or in equity, and resting wholly on the authority of the statute of the state, which describes the mode of proceeding.

The conclusion is that this, so far as the question of removal is concerned, is a separate suit between the city and Jane E. Martin. In form the whole is one suit, in which there are many defendants; but in substance and reality one suit, in which each defendant who owns a particular lot is a party, and the controversy between the city and him or her, is sole.

Perhaps I ought to make a remark as to the effect of any subsequent action that may be taken on the part of the city for the purpose of raising the money necessary to pay for the compensation which may be awarded the owners of the different lots. It is not necessary now to decide what may be the effect of this ruling upon an application of that kind—whether it may be made here or in the state court; but, wherever made, it seems to me that there will still remain but one controversy between the city and Jane E. Martin, namely, what shall be the assessment and benefits as to her lot, which should be deducted from the amount of compensation which is awarded to her by the jury.

The result is that this court will take jurisdiction of the suit and controversy between the city and Jane E. Martin, and leave the other suits and controversies between the city and different owners of the property sought to be condemned, to be determined by the state court.