## In re CITY OF CHICAGO.

(Circuit Court, N. D. Illinois. May 17, 1894.)

1. REMOVAL OF CAUSES—SUITS—ASSESSMENT PROCEEDINGS.

Assessment proceedings for municipal improvement, being an exercise of the taxing power and an administrative act, do not constitute a "suit," within the provisions for removal of suits to federal courts, though they are conducted under judicial forms by a court of general judicial powers.

2. SAME—SEPARABLE CONTROVERSY.

There is not a separable controversy, as required by the removal statute, in an assessment proceeding for municipal improvements, where the court which conducts it determines the district on which the assessment shall be laid, and therefore who shall be parties, and in a single judgment each piece of property is assessed for an amount bearing the same proportion to the full amount to be collected that its benefits bear to the full amount of benefits.

Special assessment proceedings by the city of Chicago, removed to the federal court. The city moves to remand.

The city of Chicago moves to remand to the county court of Cook county a special assessment proceeding for putting a sewer in Montrose Boulevard, which case was removed to this court on petition of the Fidelity Insurance, Trust & Safe-Deposit Company, as a nonresident lot owner, claiming separable controversy. Proceedings were instituted by the city for making this improvement, pursuant to article 9 of the act of the Revised Statutes of Illinois relating to cities and villages. This act provides that the council shall order a petition filed in the county court to assess the cost, after an improvement has been ordered, and estimates of the cost have been made and approved. Thereupon the county court appoints three commissioners, who are to ascertain and report (1) the amount of benefits to the city, and (2) an assessment of the balance of cost against such parcels of land as they shall find benefited in the proportion in which they will be severally benefited. They are to give to owners affected notice by mail and publication, and any person interested may file objections. All owners who do not object are defaulted, and assessments confirmed against the lots. When the report comes up for hearing, evidence may be introduced by objectors and by the city, and the hearing must be "conducted as in other cases at law"; and a jury determines whether the premises of objectors are assessed more or less than their proportionate share of the cost, and what amount they should be assessed. The court may at any time before final judgment modify, alter, change, annul, or confirm any assessment returned, or cause any such assessment to be recast by the same commissioners, or may appoint other commissioners for the purpose, and may take any proceedings which may be necessary to make a true and just assessment. One judgment is entered for all assessments (People v. Gay, 105 Ill. 332); but it has the effect of a several judgment as to each parcel assessed; and in case of appeal or writ of error by an objector, the judgment is not invalidated, and is not delayed, except as to his assessment. The judgment is certified to the collector of taxes, and constitutes his warrant. Subsequently, application is made to the county court, in the case of delinquents, for judgment of sale against lands unpaid. The petition for removal to this court was presented when the matter was before the county court on the commissioners' report, assessing benefits against a great number of parcels, with numerous owners (including this objector's land), and covering such area as the commissioners deemed subject to benefits, and not being confined to abutting property. The order thereupon names only the objector and his parcel of land, evidently intending to retain in the county court the other assessments.

Lockwood Honore, for city of Chicago.
Isham, Lincoln & Beale, for objector.

SEAMAN, District Judge (after stating the facts). This motion to remand presents two important questions, namely: (1) Can the proceedings for this special assessment be held to constitute a "suit," within the meaning of the federal judiciary laws? (2) If so taken, is there a separable controversy, as required by the removal statute?

1. There have been frequent definitions by the supreme court of a "suit" in the sense of these removal acts, applying it to all proceedings which are strictly judicial, and in which parties are litigating their rights. In Weston v. City of Charleston, 2 Pet. 449, the opinion, by Chief Justice Marshall, holds it applicable to a writ of prohibition, and says:

> "The term is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice by which an individual pursues that remedy in a court of justice which the law affords him. The modes of proceeding may be various, but, if a right is litigated between parties in a court of justice, the proceeding by which the decision of the court is sought is a suit."

This definition has been frequently readopted, and made to reach writs of mandamus (Kendall v. U. S., 12 Pet. 524); habeas corpus (Holmes v. Jannison, 14 Pet. 540; Ex parte Milligan, 4 Wall. 2); proceedings for assessment of the value of land taken under the power of eminent domain (Kohl v. U. S., 91 U. S. 367; Boom Co. v. Patterson, 98 U. S. 403; Searl v. School Dist., 124 U. S. 197, 8 Sup. Ct. 460); and like proceedings for condemnation, which include assessment for benefits against other premises (Pacific Railroad Removal Cases, 115 U. S. 1, 5 Sup. Ct. 1113; City of Chicago v. Hutchinson, 11 Biss. 484, 15 Fed. 129).

In each of these cases the proceeding was judicial and adversary. Whether it was strictly judicial in the eminent domain cases was seriously considered, and finally so held, under the distinctions pointed out. In Boom Co. v. Patterson the view was urged before the court that the proceeding to take private property for public use is an exercise by the state of its sovereign right of eminent domain, with which the judiciary department, especially of the United States, had no right to interfere. The court answers:

> "This position is undoubtedly a sound one so far as the act of appropriating the property is concerned. The right of eminent domain—that is, the right to take private property for public use—appertains to every independent government. It requires no constitutional recognition; it is an attribute of sovereignty. The clause found in the constitutions of the several states providing for just compensation for property taken is a mere limitation upon the exercise of the right. When the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance. * * * But notwithstanding the right is one that appertains to sovereignty, when the sovereign power attaches conditions to its exercise, the inquiry whether the constitutions have been observed is a proper matter for judicial cognizance."

The ascertainment of the amount of compensation, therefore, becomes a judicial inquiry when carried to a state court by an appeal from the award of commissioners.

The proceeding here under consideration is of another and different character,—the machinery of taxation, also an attribute of sovereignty. It is an exercise by the city of Chicago of the power vested

in it to construct a system of sewers, and assess a portion of the expense as benefits to such lots or tracts of land as are deemed benefited. The statute clearly confers the power. Formerly there was much discussion as to the constitutionality of such legislation, and whether the special assessments were laid as taxes, or in exercise of the power of eminent domain; but the constitutional validity is now well settled, and "the courts are very generally agreed that the authority to require the property specially benefited to bear the expense of local improvements is a branch of the taxing power, or included within it." 2 Dill. Mun. Corp. (3d Ed.) § 752; Cooley, Tax'n (2d Ed.) 623.

I take it, therefore, that this proceeding must be regarded as an exercise of the taxing power, and that any distinction between that and the exercise of the power of eminent domain may be important for answer to this first inquiry. It is stated in Cooley on Taxation (page 430) that the distinction is clear, and the text adopts the following definitions by Ruggles, J., in People v. Brooklyn, 4 N. Y. 419:

"Taxation exacts money or services from individuals as and for their respective shares of contribution to any public burden. Private property taken for any public use, by right of eminent domain, is taken, not as the owner's share of contribution to a public burden, but as so much beyond his share. Special compensation is therefore to be made in the latter case, because the government is a debtor for the property so taken; but not in the former, because the payment of taxes is a duty, and creates no obligation to repay otherwise than in the proper application of the tax. Taxation operates upon the community, or upon a class of persons in a community, and by some rule of apportionment. The exercise of the right of eminent domain operates upon an individual, and without reference to the amount or value exacted from any other individual or class of individuals."

The power of taxation is legislative, and not judicial. Its exercise is not a judicial act, in any ordinary sense, "and it cannot be exercised otherwise than under the authority of the legislature." Meriweather v. Garrett, 102 U. S. 472; Rees v. Watertown, 19 Wall. 107; Heine v. Commissioners, Id. 655; Upshur Co. v. Rich, 135 U. S. 467, 10 Sup. Ct. 651; Cooley, Tax'n, 43. The assessment of benefits is governed by the same rule, and is entirely legislative, both as to power and exercise. Some agency must be employed for the apportionment. It may be left to the judgment of assessors or other officers to fix upon view, or be fixed by a definite standard prescribed by the legislature, as to frontage and location. The district within which the tax shall be laid may be left to the judgment of the agency employed for assessment, or may be fixed by the legislature; and, where there is delegation to the agency, it possesses the legislative power for the purpose, and its act is legislative. Cooley, Tax'n, 640; Upshur Co. v. Rich, 135 U. S. 467, 10 Sup. Ct. 651.

The legislature of Illinois have, by the act in question, delegated this agency for the assessment to the county court, which, in turn, appoints commissioners to examine and report; but they act as its officers, and under its control and supervision. The county court is constituted the primary instrument for making the special assessment, and for hearing objections and making final determination, through a jury regularly impaneled. It is possessed of judicial powers, and hearings in these matters are conducted as in other

cases at law, and the final action takes the form of a judgment. Does this constitute a "suit," in the sense of the statute giving jurisdiction to the federal courts? Considering the source of power, and that its exercise is legislative or administrative, and not judicial in its nature, I am of the opinion that it is not a "suit," within the federal jurisdiction. It is true that in People v. Gary, 105 Ill. 332, the supreme court of Illinois places this proceeding under the head of a "suit," for application of the fee bill, but that view should not control to the extent of conferring jurisdiction upon a federal court over these special proceedings, beyond any possible intention of the legislature. To take jurisdiction in such case would be to assume the exercise of the delicate power of taxation, and (employing the language of Mr. Justice Miller in Heine v. Commissioners, supra) would constitute "an invasion by the judiciary of the federal government of the legislative functions of the state government."

Because the legislature saw fit to vest this power or duty in the county court, it does not follow that it would be thereby vested in any other court, and certainly not in a federal court, unless it is clearly a judicial power or duty. The language of Mr. Justice Field, in the concurring opinion in Meriweather v. Garrett, 19 Wall. 472, is well applicable here. After stating that taxes are not debts, but imposts levied for support of the government, or for special purposes authorized by it, and the consent of the taxpayer is not necessary to their enforcement, but they operate in invitum, and that the form of the procedure cannot change their character, it is there said:

"The levying of taxes is not a judicial act. It has no element of one. It is a high act of sovereignty, to be performed only by the legislature upon considerations of policy, necessity, and the public welfare. In the distribution of the powers of government in this country into three departments, the power of taxation falls to the legislative. * * * Having the sole power to authorize the tax, it must equally possess the sole power to prescribe the means by which the tax shall be collected, and to designate the officers through whom it shall be enforced."

In Upshur Co. v. Rich, 135 U. S. 467, 10 Sup. Ct. 651, it was held that an appeal from an assessment of taxes taken under a statute of West Virginia to a tribunal called the "county court" was not a suit, and not removable to the United States court. That case must rule this, unless there is vital distinction in the fact which is noted there,—that the so-called "county court" had no judicial powers except in matters of probate, while here the county court has, aside from this assessment function, full judicial powers. The opinion places stress upon this want of judicial power in the appellate tribunal, and suggests that the proceeding might become a suit if appeal were provided to a court having such powers; but the decision is based upon the conclusion that on appeal, as well as on the assessment, the performance was "an administrative act"; that, as the original assessment could not be called a "suit for removal," neither was its nature changed by the appeal. The case there was upon an appeal, under an act which admitted it as a single appeal. This course, if provided by the legislature to a court of complete jurisdiction, would bear strong resemblance to a suit or judicial proceeding,

and might raise the question for which the distinction was made in that opinion. But that question is not here, for this is the initial proceeding for the assessment, which is placed in the county court. Although conducted under judicial forms, and in a court having judicial powers, I am of opinion that it is exclusively an administrative proceeding, and not cognizable by the federal court,—a court not contemplated by the legislature for participation in the assessment, and which has uniformly denied any function of taxation. "The legislature makes, the executive executes, and the judiciary construes the law" (Wayman v. Southard, 10 Wheat. 1, 46); and it is only when the legislature or executive abuse their power that the judicial arm is extended for arrest of the abuse.

2. Thus far I have not referred to two important cases, which were strongly urged to maintain jurisdiction here, and should control if applicable to this proceeding, viz. Pacific Railroad Removal Cases, 115 U. S. 1, 5 Sup. Ct. 1113, and City of Chicago v. Hutchinson, 11 Biss. 484, 15 Fed. 129. Their consideration comes under the inquiry of separable controversy, and has therefore been left to the second point. In Pacific Railroad Removal Cases there was involved in one of them a proceeding by the city of Kansas "for widening a street through the depot grounds of the company, and thereby taking a portion of its grounds and the property of many other persons." Under the statute, a jury had been summoned before the mayor, and assessed the value of the company's property taken, and benefits against certain other property of the company towards payment of the total damages. The statute gave an appeal to the circuit court of the state, and the company and other dissatisfied persons took separate appeals accordingly. The company obtained removal of its case to the United States court. The decision passes upon several cases for different causes of action so removed by the company, and concludes that the incorporation of the company under the laws of the United States entitles it to removal of each, upon the ground that they are suits "arising under the laws of the United States." The opinion then answers further objections made in the City of Kansas Case as follows: (1) That it was a suit at law under the rule in Boom Co. v. Patterson, 98 U. S. 403. (2) That the appeal of the company could be tried separately from the others as the issues were distinct, and involved only three points of inquiry: First, the value of the property taken; secondly, the amount of benefits to the remaining property not taken; and perhaps, thirdly, the right to open a street across the depot grounds. The only difficulty was found in reference to the assessment of benefits, and as to that it says:

"The balance of damages for property taken, after deducting the amount to be paid by the city, is to be divided and assessed pro rata upon those whose property is benefited, in proportion to the benefit to each. But each piece of property taken is valued by itself, without reference to the proposed improvement; and the amount of benefit to each piece of property benefited is ascertained separately, without reference to the other pieces benefited. It is only after this has been done that the aggregate amounts are ascertained, and the damages are assessed pro rata against the pieces of property benefited according to the benefits to each, which is the result of a mere arithmetical calculation. In the state court the jury ascertains and finds all these facts, and reports them in one general verdict."

Aside from the independent ground for removal, because the company was a federal corporation, there are important distinctions between the cases there presented and the one here, which I think place this outside that ruling, viz.: (1) There the proceeding was for condemnation of private property for public use, in which the value was to be assessed, marking a controversy, as well pointed out in the Boom Co. Case. The assessment of benefits against other property was, by legislative act, made an incident to the same proceeding, and governed by its rules. Its status was placed upon the eminent domain rights, within judicial cognizance, and not under the administrative rule of taxation, which applies here. (2) That case was regularly in a court of law, upon a separate and distinct appeal, allowed by the statute; while the matter here presented is an original assessment. (3) It is stated in the City of Kansas Case that "the amount of benefit to each piece of property benefited is ascertained separately, without reference to the other pieces benefited"; and, when the aggregate amounts of damages and benefits are ascertained, the pro rata assessments are "the result of a mere arithmetical calculation." The provisions of the statute under which that proceeding was taken are not sufficiently stated to show the method by which the assessment against each parcel could be worked out independently; but it is clear that the simple rule there stated cannot be made applicable for an independent assessment under this statute. There are factors for the result in each case which can only be supplied when the whole proceeding is before the court. In the first place, there is no defined district through which the assessment shall be spread. That is left to be determined by the tribunal making the assessment, according to its discretion of the territory which may be benefited by the improvement. Each individual assessment is dependent upon the number who shall be so brought in. Again, it is the theory of the statute that there shall be a valuation of benefit to each lot. It is not assessed for this whole benefit, but for the pro rata share of the expense to be assessed which its valuation of benefits bears to the aggregate of such valuations. Each assessment requires for its ascertainment the aggregate of expense to be assessed and the aggregate valuation of benefits. It is therefore impossible to make a just assessment in an individual case without having as parties all other lot owners involved. The tribunal of assessment determines who shall be such parties, and all are equally entitled to hearing. This can only be accomplished in a court having jurisdiction over all, and in a single trial, or through a trial which shall be dominant (in case of appeal) for establishing these factors. This court cannot take a place either dominant or servient. (4) In the City of Kansas Case there was no decision by the state supreme court interpreting the statute there in question. 115 U. S. 21.[1] Here the supreme court of Illinois has directly passed upon this statute, in People v. Gary, 105 Ill. 332, and held that "it was clear beyond question that the proceeding on the part of the city was an indivisible suit;" that "there were no proper means by which the suit could have been di-

[1] 5 Sup. Ct. Rep. 1123.

vided so as to render it a several proceeding;" that "the trial was one as to all of the defendants," and one judgment; and that the declaration of the statute that the judgment should be considered several was only for the purpose of regulating the manner of obtaining satisfaction. This is an interpretation of a local statute by the highest tribunal of the state, and must be respected as such. The point suggested by counsel for the lot owner—that such construction would approve legislation to deprive the federal court of legitimate jurisdiction—is not well taken. The means for tax assessment are entirely within legislative control.

The case of City of Chicago v. Hutchinson was decided in this court prior to the Pacific Railroad Removal Cases. It was a similar condemnation proceeding, and entirely in the line of the later decision. It is equally distinguished from the present case.

I am satisfied that there cannot be independent separate proceedings for this assessment; that this court is without jurisdiction, in whole or in part; and it must remain with the county court, where placed by the statute. An order for remand will be entered accordingly.