DRAINAGE DIST. NO. 19, CALDWELL COUNTY, MO., v. CHICAGO, M. & ST. P. RY. CO.

(District Court, W. D. Missouri, W. D.    July 27, 1912.)

No. 3,783.

1. REMOVAL OF CAUSES (§ 9*)—SUITS—DRAINAGE PROCEEDINGS.

A proceeding under Rev. St. Mo. 1909, § 5592, authorizing any person whose lands are affected by a proposed drain to file exceptions to assessments for benefits, and requiring the county court to hear testimony on the questions made by the exceptions, and authorizing an appeal from an order of the court, is a suit in the county court, vested by Const. Mo. art. 6, § 36, with judicial power, within the removal statute providing that the subject of removal is any suit of a civil nature pending in a state court.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 27; Dec. Dig. § 9.*]

2. REMOVAL OF CAUSES (§ 48*)—SEPARABLE CONTROVERSIES—ASSESSMENTS IN DRAINAGE DISTRICTS.

Under Rev. St. Mo. 1909, § 5583 et seq., providing for the establishment of drainage districts and the assessment of benefits, assessments for benefits by a drainage district are separable controversies, and a nonresident owner may remove to the federal court the controversy involving the assessments of benefits to his land.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 94; Dec. Dig. § 48.*

Separable controversy as ground for removal of cause to federal courts, see notes to Robbins v. Ellenbogen, 18 C. C. A. 86; Mecke v. Valleytown Mineral Co., 35 C. C. A. 155; Pollitz v. Wabash R. Co., 100 C. C. A. 4.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. REMOVAL OF CAUSES (§ 102*)—REMAND—DOUBTFUL CASES.

A motion to remand to a state court will be denied in case the question of the jurisdiction of the federal court is doubtful.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 218–220, 223, 224; Dec. Dig. § 102.*]

Proceedings by Drainage District No. 19, Caldwell County, Missouri, for assessment of benefits. Motion to remand the proceedings as affecting the Chicago, Milwaukee & St. Paul Railway Company denied.

This case was removed to this court from the county court of Caldwell county. It involves a proceeding for the construction of a drainage ditch in Caldwell and Livingston counties, Mo., and the assessment of benefits and damages incidental thereto. The following are the material facts involved:

The original proceeding was brought under article 4, c. 41, R. S. Mo. 1909, vol. 2, p. 1780. It is instituted by petition, signed by one or more landowners, filed with the clerk of the county court. The court then appoints three resident freeholders, as viewers or commissioners, and a competent civil engineer to assist them, to view the line of the proposed ditch or improvement, and report by actual view of the premises, along and adjacent thereto, whether the proposed improvement is necessary, practicable, and would be of public utility or conducive to the public health, convenience, or welfare, and, if so, the best route for the proposed drain. Upon the filing of this report, it is the duty of the court or the clerk thereof, in vacation, to fix the time of the hearing of the petition and the report of the viewers, and to give notice thereof by publication.

Any person interested in the land that will be affected by the proposed improvement may file with the county clerk, on or before the day set for the hearing, a written remonstrance against or objection to the same, as located, setting forth his grievance, which shall be heard and determined by the court. If the court find in favor of making the improvement, the lands thereafter found to be benefited thereby shall constitute a drainage district, which shall be designated by number, and shall be a body corporate capable of suing and being sued.

Upon such finding in favor of the improvement, the county court shall make an order reappointing the formerly appointed viewers and civil engineer, directing them to go upon the land described, establish the precise location thereof, mark the intersections and boundaries of lands, determine the dimensions and form of the proposed ditch, estimate the cost, and make a report, profile, and plat of the same; also, a schedule of all lots and lands, and of public and corporate roads that will be benefited, damaged, or condemned by or for the improvement, and the damage or benefit to each tract of 40 acres or less, and make separate estimates of the cost of location and construction, and apportion the same to each tract in proportion to the benefits or damages that may result to each; also, specify the time and manner in which the improvement shall be made and completed.

Such viewers shall have the power to condemn the right of way for the ditch or other improvement; and, when damages are allowed persons, their benefits, if benefited, shall be taken into consideration, and their assessment for benefits shall be reduced by the amount of their damages; and, if not benefited, they shall be allowed and paid compensation for their damages.

Upon the filing of the report of the viewers, the county clerk shall immediately set the hearing of the same for some day of the next regular term of the county court. He shall thereupon issue, in the name of the state, a notice, directed, by name, to every person returned by the engineer and viewers as the owner of every lot or parcel of land affected by the proposed improvement or of any interest therein; and also to all others who it may in any manner be ascertained own or have any interest in such land.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The court shall then first determine whether notice has been given, and, if, so, it shall examine the report of the engineer and viewers, and if it appears to the court that the estimates of the cost of location and construction and of damages and benefits to each tract are correct, and that the apportionment is in proportion to the benefits and damages to each tract, and is in all things fair and just, it shall approve and confirm the same. Otherwise, it may amend the report upon the evidence so as to make the apportionments fair and just in proportion to the benefits and damages, and may order a change in location and dimensions, provided the parties interested shall convey or cause to be conveyed to the drainage district a right of way upon the route selected by the court.

All lands benefited thereby shall be assessed for the construction thereof whether the improvement passes through said land or not. No assessment shall be made upon any other principle than that of such benefits derived, upon the basis of benefits accorded by reason of the construction of the improvement and of giving an outlet for drainage.

Any person whose lands are affected by the proposed improvements may, on or before the day set for the hearing by the court, file exceptions to the apportionments made by, and to the action of, the viewers upon any claim for compensation or damages. The county court may hear testimony and examine witnesses upon all questions made by such exceptions, and for that purpose may compel the attendance of persons as witnesses and the production of other evidence, and its decision upon each of the exceptions shall be entered of record. Any person may appeal from the order of the court, and upon such appeal there may be determined either or both of the following questions: First, whether compensation has been allowed for property appropriated; and, second, whether proper damages have been allowed for property prejudicially affected by the improvements. Upon perfecting such appeal, and giving bond, a transcript of the proceedings before the county court relating to the land of appellant and involved in the appeal shall be duly certified and filed, together with all original papers relating to the proceedings, in the office of the clerk of the circuit court, within 30 days after filing said bond. It is expressly provided that nothing in section 5592 authorizing such appeal shall be so construed as to authorize any appellant to stay the proceedings in the county court, or to prevent progress in the work of constructing such public ditches, drains, or water courses, or other work or improvement; but said county court may proceed with said work, and any subsequent proceedings in the circuit court shall affect only the rights and interest of the appellant in property located in such drainage district.

The clerk of the circuit court shall docket said appeal, styling the appellant the plaintiff and the drainage district the defendant, and the cause shall stand for trial and be tried as other appeal cases are tried in the circuit court. After the trial and judgment in the circuit court, the clerk of that court shall retain the transcript of the proceedings in the county court and retransmit to the county clerk all of the original papers filed in his office by the county clerk, together with a transcript of the proceedings had in the circuit court, including a certified copy of the finding or verdict, and the judgment of the said court; the clerk of the circuit court shall also certify an itemized statement of the cost accruing on the appeal. After a transcript of the proceedings had in the circuit court is filed in the office of the county clerk, the county court shall cause such entries to be made on its record as may be necessary to give effect to the judgment of the circuit court.

In this case it appears that the proceedings had progressed to the point where the second set of viewers or commissioners had made their report, the day for the hearing of the same had been set, and due notice thereof had been given. At this point the railway company filed with the county court its application for removal, which was refused. Thereupon the applicant caused a transcript of the proceedings to be filed in this court, as provided by law. The drainage district then filed its motion to remand, and contends: First, that this proceeding is not a suit within the meaning of the removal statute; second, that it does not present a separate con-

troversy within the meaning of the removal statute. In its petition for removal the defendant alleges that benefits amounting to $617.50 have been illegally, wrongfully, and improperly assessed against it, and that the drainage district proposes to construct a ditch along and across the right of way and roadbed of petitioner, to its damage in the sum of $17,490.

L. R. Kautz, of Kingston, Mo., and Paul D. Kitt, of Chillicothe, Mo., for complainant.

Fred S. Hudson, of Chillicothe, Mo., for defendant.

VAN VALKENBURGH, District Judge (after stating the facts as above). The matters here presented are difficult and perplexing. Nevertheless, they involve important rights and interests, and address themselves to the thoughtful consideration of the court. Similar questions have heretofore been before the national courts, in this and other jurisdictions, and have been variously decided, according to the facts and the local laws specifically involved. This case must be determined upon its own facts and the special statute under which it arises, in accordance with principles now fairly well established.

In Re City of Chicago (C. C.) 64 Fed. 897, proceedings were instituted by the city for making an improvement, pursuant to article 9 of the act of the Revised Statutes of Illinois relating to cities and villages. This act provides that the council shall order a petition filed in the county court to assess the cost, after an improvement has been ordered, and estimates of the cost have been made and approved. Thereupon the county court appoints three commissioners, who are to ascertain and report (1) the amount of benefits to the city, and (2) an assessment of the balance of cost against such parcels of land as they shall find benefited in the proportion in which they will be severally benefited. They are to give to owners affected notice by mail and publication, and any person interested may file objections. All owners who do not object are defaulted, and assessments confirmed against the lots. When the report comes up for hearing, evidence may be introduced by objectors and by the city, and the hearing must be conducted as in other cases at law; and a jury determines whether the premises of objectors are assessed more or less than their proportionate share of the cost, and what amount they should be assessed. The court may at any time before final judgment modify, alter, change, annul, or confirm any assessment returned, or cause any such assessment to be recast by the same commissioners, or may appoint other commissioners for the purpose, and may take any proceedings which may be necessary to make a true and just assessment. One judgment is entered for all assessments, but it has the effect of a several judgment as to each parcel assessed; and, in case of appeal or writ of error by an objector, the judgment is not invalidated, and is not delayed, except as to his assessment. The petition for removal to the Circuit Court for the Northern District of Illinois was presented when the matter was before the county court on the commissioners' report, assessing benefits against a great number of parcels, with numerous owners (including this objector's land), and covering such area as the commissioners deemed subject to benefits, and not being confined

to abutting property. The order thereupon names only the objector and his parcel of land, evidently intending to retain in the county court the other assessments.

Judge Seaman there held that:

"Assessment proceedings for municipal improvement, being an exercise of the taxing power and an administrative act, do not constitute a 'suit,' within the provisions for removal of suits to federal courts, though they are conducted under judicial forms by a court of general judicial powers."

Also, that:

"There is not a separable controversy, as required by the removal statute, in an assessment proceeding for municipal improvements, where the court, which conducts it determines the district on which the assessment shall be laid, and therefore who shall be parties, and in a single judgment each piece of property is assessed for an amount bearing the same proportion to the full amount to be collected that its benefits bear to the full amount of benefits."

He holds that the "ascertainment of the amount of compensation therefore becomes a judicial inquiry when carried to a state court by an appeal from the award of commissioners," and quotes from Cooley on Taxation in distinguishing between the exercise of the taxing power and that of eminent domain. The proceeding before the county court was held to be entirely an administrative proceeding, and therefore not cognizable by the federal court—a court not contemplated by the Legislature for participation in the assessment.

In Re Jarnecke Ditch (C. C.) 69 Fed. 161, the petition was filed originally in the circuit court of the county—a court of general jurisdiction with broad judicial functions. After a filing of petition by landowners, and the location of route and ascertainment of costs by drainage commissioners, and the filing of their report in the circuit court, any landowners opposed to the drain might file remonstrances putting in issue the questions whether the drain will promote public health or be of public utility; whether the scheme is practicable, and can be accomplished for the aggregate amount of benefits assessed; and whether the assessment of benefits to the lands of the remonstrant is too large. Each remonstrant is entitled to file a separate remonstrance, and to have a separate trial thereof, in which the only parties actually concerned in the litigation are the petitioners as plaintiffs and himself as defendant. Judge Baker said:

"This controversy, if tried in the state court, is one triable by and between these parties, and possesses all the characteristics of a civil suit. The petition, report, and remonstrance represent controversies involving the several issues or questions above stated. The taking of land for a drain, and the fixing of a charge upon other lands for its construction, involve rights of property or claims thereto capable of pecuniary estimation, which are the subject of litigation presented by the petition, report, and remonstrances. Such litigation constitutes a suit within the meaning of the removal act. The term "suit," said Mr. Chief Justice Marshall in Weston v. City Council, 2 Pet. 449, 464, 7 L. Ed. 481, 'is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice which the law affords him. The modes of proceeding may be various; but, if a right is litigated between the parties in a court of justice, the proceeding by which the decision of the court is sought is a suit.' And in Upshur County v. Rich, 135 U. S. 467–477, 10 Sup. Ct. 651,

34 L. Ed. 196, it is said: 'The principle to be deduced from these cases is that a proceeding not in a court of justice, but carried on by the executive officers in the exercise of their property functions, as in the valuation of property for the just distribution of taxes or assessments, is purely administrative in character, and cannot in any just sense be called a suit; and that an appeal in such a case to a board of assessors or commissioners having no judicial powers, and only authorized to determine questions of quantity, proportion, and value, is not a suit, but that such an appeal may become a suit if made to a court or tribunal having power to determine questions of law and fact, either with or without a jury, and there are parties litigant to contest the case on one side or the other.' "

He further holds, however, that in such a proceeding in the case before him there is no separable controversy which will authorize a removal by some of the remonstrants, who are citizens of other states, for all the parties to the proceedings are inseparably interested in the main issue, namely, the right of the petitioners to have the drain established; to which issue the question as to the amount of benefits assessed to each remonstrant is merely incidental. The learned judge says further:

"The proceeding does not involve the mere exercise of the taxing power of the state. It is in the nature of the exercise of the power of eminent domain, and contemplates the taking of land whereon to construct the drain, as well as the assessment of benefits on the remaining lands, whereby to pay for its establishment and construction. In this particular it differs from a proceeding solely for the purpose of raising money by the exercise of the taxing power to aid in the construction of a public improvement. This differentiates the present case from that of In re City of Chicago [C. C.] 64 Fed. 897, and other cases of like character, which hold that a proceeding solely for the purpose of raising money by the exercise of the taxing power for the construction of a public improvement is not a suit, although such proceedings may be conducted in a court of general jurisdiction."

After holding that a separable controversy was not presented, for the reasons above stated, this suggestion is added:

"Whether a removal could be had if the sole issue presented by the remonstrants was the amount of the assessments, it is not necessary to determine."

In Pacific Railroad Removal Cases, 115 U. S. 1, 5 Sup. Ct. 1113, 29 L. Ed. 319, the Supreme Court of the United States, speaking through Mr. Justice Bradley, held that, in a proceeding under the then charter of Kansas City for the widening of a street, the controversy was separable and might be removed by the defendant railroad company. The learned Justice said:

"What, then, is the relation in which the railway company, as an appellant, stands towards the city of Kansas in this litigation? Clearly, it has two distinct issues, or grounds of controversy: First, the value of its property taken for the street; secondly, the amount of benefit which the widening of the street will create to its remaining property, not so taken. It may have a third issue, and, judging from the course of the argument, it has a third issue, still more important to it than either of the others, to wit, the right of a city to open a street at all across its depot grounds. Now this controversy involving these three issues is a distinct controversy between the company and the city. It may be settled in the same trial with the other appeals, and by a single jury; but the controversy is a distinct and separate one, and is capable of being tried distinctly and sep-

arately from the others. If the state circuit court had equity powers, it might direct a separate issue for the trial of this controversy by itself. It might try the other appeals without a jury (the parties waiving a jury), and try this controversy by a jury.

"If this view of the subject is correct, we see no difficulty in removing the controversy between the city of Kansas and the railway company for trial in the Circuit Court of the United States. The proceedings for widening the street, pending in the state court, may have to await the decision of the case in the federal court; and the result of those proceedings may be materially affected by the decision of that case; but that consideration does not affect the separate and distinct character of the controversy between the city and the railway company."

This case was decided before the construction of this charter provision by the Supreme Court of Missouri. Immediately thereafter, in Holden v. Gill, 84 Mo. 248, the latter court held that a proceeding of condemnation in Kansas City, under its city charter, presented a case of an indivisible unit, and not a separate controversy between the city and any given defendant. In view of this construction, placed upon these charter provisions relating to condemnation, Judge Philips held, in Kansas City v. Hennegan (C. C.) 152 Fed. 249, that such a case is not removable to the federal court.

[1] The removal statute provides that the subject of removal is any suit of a civil nature at law or in equity pending in any state court. Did this proceeding, at the time the petition for removal was filed, respond to this definition?

The Constitution of Missouri, art. 6, § 1, provides:

"The judicial power of the state, as to matters of law and equity, except as in this Constitution otherwise provided, shall be vested in a Supreme Court, the St. Louis Court of Appeals, circuit courts, criminal courts, probate courts, county courts and municipal corporation courts."

Section 36 provides:

"In each county there shall be a county court, which shall be a court of record, and shall have jurisdiction to transact all county and such other business as may be prescribed by law. The court shall consist of one or more judges, not exceeding three, of whom the probate judge may be one, as may be provided by law."

By this section judicial power is vested in the county courts. Benton County et al. v. Morgan et al., 163 Mo. 661, 64 S. W. 119.

After the second report of the viewers assessing and apportioning benefits and damages, section 5592, Revised Statutes Missouri 1909, vol. 2, p. 1786, provides:

"Any person whose lands are affected by the proposed improvements may, on or before the day set for the hearing by the court, file exceptions to the apportionments made by, and to the action of, the viewers upon any claim for compensation or damages. The county court may hear testimony and examine witnesses upon all questions made by such exceptions, and for that purpose may compel the attendance of persons as witnesses and the production of other evidence, and its decision upon each of the exceptions shall be entered of record; if the exceptions be sustained, the cost of hearing the same shall be paid as other location expenses are paid, and, if the same be overruled, such cost shall be taxed against the person filing the exceptions."

By the Constitution the county court was already a state court of record with judicial functions. By this act the Legislature specifically invested it with judicial powers in connection with this class of cases. To adapt the language of the Supreme Court of the United States in Traction Co. v. St. Bernard Mining Co., 196 U. S. 239–251, 25 Sup. Ct. 251, 49 L. Ed. 462, this was a judicial proceeding initiated in a tribunal which constitutes a part of the judicial establishment of Missouri, as ordained by its Constitution, and the court, although charged with some duties of an administrative character, is a judicial tribunal and a court of record. In re City of Chicago (C. C.) 64 Fed. 897, is distinguished because here these are not mere assessment proceedings for municipal improvements, an exercise of the taxing power, and an administrative act. The county court is a court of the state, and the proceeding is a suit within the meaning of the removal act and the reasoning of the authoritative cases herein above referred to.

[2]. If this be true, is the controversy a separable one? I am constrained to hold that it is. It will be recalled that under the act a hearing takes place before the county court upon the first report of the viewers or commissioners to determine whether the improvement is necessary for sanitary or agricultural purposes, or would be of public utility, or conducive to the public health, convenience, or welfare; in other words, the right of the petitioners to have the drain established. When this has been judicially determined by the county court, the second set of viewers are appointed to make report, upon which, and the remonstrances thereto, are made up the issues relating to assessments, benefits, damages, and compensation to and for the property appropriated or affected. It was at this point that the defendant railroad company seasonably asserted its right of removal. Its action was in strict compliance with the removal statute, provided the right of removal exists. The question of the right of the petitioners to have the drain established having already been disposed of, the objection to the separable nature of the controversy advanced by Judge Baker in Re Jarnecke Ditch, supra, is removed.

It should be noted in passing that by section 5583 it is provided that, upon the filing of the first report of the commissioners, and the hearing of remonstrances thereto:

"If the court shall find in favor of making the improvement, the lands which, as hereinafter provided, it may be found will be thereby benefited, shall, for the purpose of this article, constitute a drainage district, which shall be designated by number. Such district shall be a body corporate and possess the usual powers of a corporation for public purposes, and shall be capable of suing and being sued, of holding such real and personal property as may be at any time either donated to or acquired by it, in accordance with the provisions of this article."

From this point on the controversy is no longer between petitioners and other individuals, but between the drainage district, a corporation capable of suing and being sued, and acquiring property, real and personal, for the purposes of its creation and each individual affected. That controversy now relates solely to the taking or damaging of property and the benefits, damages, and compensation to be assessed

and paid. These are matters entirely between the district and each individual landowner, as we have already seen from the Pacific Railroad Removal Cases, and other cases cited. Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206. This is necessarily so, unless the laws of this state affecting real property, as construed by the highest courts of the state, provide otherwise.

Reference has already been made to the holding of the Supreme Court of Missouri in Holden v. Gill, with reference to condemnations under the charter of Kansas City; but that case was founded upon the peculiar wording of the charter provision, as is disclosed by an examination of the opinion. Therein it is said:

"Section 6 provides for an appeal by the city, or any party aggrieved, to the circuit court of Jackson county, which thereupon becomes possessed of the cause and tries it de novo.  *  *  *

"It is but one cause, although in the proceeding each of a hundred parties has a distinct assessment for the compensation he may be entitled to, or the charge for benefits for which his property is liable. There is but one jury, one verdict, and one judgment.  *  *  *

"An appeal from the circuit to the Supreme Court brings up the same cause that was tried in the circuit court, and a reversal of the judgment is a reversal of it as an entirety.  *  *  *

"If, on the other hand, on a retrial the damages assessed to the appellant for taking his property, or the assessment against it for benefits, should be less than were allowed in the circuit court, the result would be to take from other property holders an amount in excess of that required to pay for the condemned property. It was evidently for this reason that, in the charter, provision was made for a trial de novo, on appeal to the circuit court. If not to meet this difficulty, why not let the verdict taken on the trial before the mayor stand, as to all those who were satisfied with that verdict, without regard to the result of the trial in the circuit court, on appeal taken by others?"

It is urged by the drainage district here, as by the city there, that as the result of a separate trial and appeal the apportionment between the various parties interested would be disturbed, and injustice and inequality would result. But the drainage law, in its own scheme, makes provision for just such a disturbance, if it be one. And in this respect the procedure under this drainage act is differentiated from that under the Kansas City charter, and therefore from the reasoning of the Supreme Court of Missouri in Holden v. Gill. This leaves the doctrine announced by Mr. Justice Bradley in the Pacific Railroad Removal Cases unimpaired and unaffected by state authority.

Section 5592 provides:

"Any person whose lands are affected by the proposed improvements may, on or before the day set for the hearing by the court, file exceptions to the apportionments made by, and to the action of, the viewers upon any claim for compensation or damages. The county court may hear testimony and examine witnesses upon all questions made by such exceptions, and for that purpose may compel the attendance of persons as witnesses and the production of other evidence, and its decision upon each of the exceptions shall be entered of record; if the exceptions be sustained, the cost of hearing the same shall be paid as other location expenses are paid, and, if the same be overruled, such cost shall be taxed against the person filing the exceptions. Any person may appeal from the order of the court, and upon such appeal, there may be determined either or both of the following questions: First, whether compensation has been allowed for property appropriated; and second, whether proper damages have been allowed

for property prejudicially affected by the improvements. * * * Provided, that nothing in this section shall be so construed as to authorize any appellant to stay the proceedings in the county court, or to prevent progress in the work of constructing such public ditches, drains or water courses, or other work or improvement; but said county court may proceed with said work, and any subsequent proceedings in the circuit court shall affect only the rights and interest of the appellant in property located in such drainage district."

Section 5593:

"The clerk of the circuit court shall docket said appeal, styling the appellant the plaintiff and the drainage district the defendant, and the cause shall stand for trial and be tried as other appeal cases are tried in the circuit court. After the trial and judgment in the circuit court, the clerk of that court shall retain the transcript of the proceedings in the county court and retransmit to the county clerk all of the original papers filed in his office by the county clerk, together with a transcript of the proceedings had in the circuit court, including a certified copy of the finding or verdict, and the judgment of the said court; the clerk of the circuit court shall also certify an itemized statement of the cost accruing on the appeal, and costs shall be paid as hereinbefore provided. After a transcript of the proceedings had in the circuit court is filed in the office of the county clerk, the county court *shall cause such entries to be made on its record as may be necessary to give effect to the judgment of the circuit court.*"

It thus appears that at this point of the controversy the drainage district, a corporation, which may sue and be sued, and acquire lands for drainage purposes, becomes the real party on one side of the controversy; on the other is that particular remonstrant, and he alone. The issue is as to the matter of damages and compensation for land appropriated or damaged in the exercise of eminent domain. No other party, in a legal sense, is concerned in this controversy. The Legislature saw fit to permit the improvement to proceed, to allow this individual matter to be litigated on appeal in the circuit court, and to give the appellant the benefit of any judgment he may obtain, no matter what its effect may be upon the drainage district, the other parties to the original proceeding, the apportionment of benefits and damages, or the cost of the improvement. If these matters can be adjusted, under the law, in a proceeding entirely within the state court, it is difficult to perceive why they may not be equally well adjusted at the end of this proceeding, which merely vouchsafes to the nonresident petitioner his guaranteed right to have his case tried in the tribunal of his choice.

Nor is it to be conceded that the law does not contemplate and provide for just such a situation. As we have seen, section 5583 provides for the creation of the district as a body corporate, possessing the usual powers of a corporation for public purposes, and capable of suing and being sued. Section 5593 provides for the conducting of this appeal in the names of the real and sole parties in interest. Section 5594 provides that those who have failed to file written exceptions to the award made by the viewers, as provided by section 5592, shall be deemed to have acquiesced in such award. Section 5603 empowers the county court, if prayed for in the petition, to issue bonds, and sell the same to meet the expenses of locating and constructing any ditch

or improvement under the provisions of this article.  Section 5598 says:

"In lieu of bonds, the county court may issue warrants on the ditching districts payable for ditch assessment and all other demands against the ditching district, such warrants drawing interest at the rate of six per cent. per annum, and of such denominations as will be convenient to pay the said assessments and demands against the lands for the proposed improvements."

Section 5599, entitled "Assessment for construction, how made—to constitute lien—delinquent tax, how collected," contains this provision:

"All costs except of construction and collection of delinquent assessments or installments, and except those taxable to the petitioners, remonstrators or appellants, shall be paid out of the county treasury, and be refunded to the county out of the first money received upon assessments, or from sales of bonds issued under the provisions of this article. After such costs are refunded, such damages, if any, as have been paid to landowners and others by the county shall be next refunded to the county."

Section 5593 provides:

"After a transcript of the proceedings (on appeal) had in the circuit court is filed in the office of the county clerk, the county court shall cause such entries to be made on its record as may be necessary to give effect to the judgment of the circuit court."

The drainage district is a body corporate, for public purposes, with revenues and resources to meet the purposes of its organization; and incidental to these purposes is the duty to pay the compensation and damages for lands taken awarded by any court having jurisdiction to determine them.  No reason appears why the judgment of this court, upon this issue, may not be certified and filed with the county court in like manner as the proceedings incidental to an appeal to the circuit court, where the same individual matter is disposed of and to the same effect.

But even though the law be incomplete and imperfect in this regard, does it follow that a nonresident owner of property sought to be appropriated can thereby be prevented from removing his case into a tribunal contemplated by the Constitution of the United States to have his rights in the premises determined?  The courts have uniformly held otherwise.  Union Terminal Ry. Co. v. Chicago, B. & Q. R. Co. et al. (C. C.) 119 Fed. 209-215; Powers v. Railway, 169 U. S. 92, 18 Sup. Ct. 264, 42 L. Ed. 673.

Counsel for the drainage district in their brief, without conceding the point, nevertheless entertain the consideration that the controversy might be separable after appeal taken to the circuit court; that it was not so at this stage; and that the action of the petitioner for removal was premature in any event.  This argument is partially disposed of by the conclusion reached that the county court is not merely a board of commissioners for award and apportionment, but a court of the state, entertaining a suit within the meaning of the removal act.  Besides, the separable nature of the controversy, made apparent by the nature of the appeal, and the parties and issues designated in the circuit court, relates back to the time when and the court in which the controversy,

in its present form, arose; that is, to the county court immediately upon the filing of the second report of the commissioners. The case is separable in the appellate court because it was separable in the court from which the appeal was taken. The petitioner would not have conformed to the requirements of the removal act if it had not filed its petition for removal when it did.

As stated at the outset, this question is attended by difficulties. It is a perplexing one, and we must concede that it is not entirely free from doubt; feeling, as we must, that it is highly desirable that matters of this nature should, so far as possible, be dealt with in the courts of the state especially designated and more conveniently adapted to handle such proceedings.

[3] Under such conditions, counsel for the drainage district state the rule to be:

"That when the jurisdiction of the federal court in a removal case is doubtful, the cause should be remanded."

This principle was originally announced because of former provisions of the law under which an order sustaining a motion to remand was a final adjudication which could be immediately reviewed by the Supreme Court. This is no longer true, and the present rule is the reverse of that stated by counsel. Boatmen's Bank v. Fritzlen, 135 Fed. 650-654, 68 C. C. A. 288.

Because of the fact that my judgment strongly approves the conclusion here reached, because, also, of the importance of the question and interests involved, and the desirability of a speedy review by a higher court, if such be desired, I am constrained to hold that the motion to remand must be overruled.