## In re THE JARNECKE DITCH.

(Circuit Court, D. Indiana. July 30, 1895.)

### No. 9,225.

1. FEDERAL COURTS—EFFECT OF STATE DECISIONS—REMOVAL OF CAUSES—STATUTORY PROCEEDINGS.

Decisions by a state supreme court that a special statutory proceeding under the state laws (such as a proceeding to establish a drain, and assess the benefits and damages thereof) is not a civil suit or action, are not controlling upon the federal courts, when the question is whether the proceeding is a civil suit in law or equity, within the meaning of the acts relating to the removal of causes.

2. REMOVAL OF CAUSES—REMOVABLE CONTROVERSIES—SPECIAL STATUTORY PROCEEDINGS FOR THE ESTABLISHMENT OF DRAINS.

Under the Indiana statutes relating to the establishment of drains (2 Burns' Rev. St. §§ 5622–5664) the proceedings are commenced by a petition of landowners, after which the drainage commissioners locate the route of the proposed drain, ascertain the cost, assess benefits and damages, and then file their report in the circuit court. Thereafter any landowners opposed to the drain may file remonstrances putting in issue the questions whether the drain will promote public health or be of public utility; whether the scheme is practicable, and can be accomplished for the aggregate amount of benefits assessed; and whether the assessment of benefits to the lands of the remonstrant is too large. These issues are to be tried by the court without a jury, and each party aggrieved has a right of appeal from its decision. *Held,* that, within the meaning of the removal acts, this proceeding presents a controversy of a "civil nature," in which the petitioners for the drain may be regarded as complainants, the remonstrants as defendants, and the report of the commissioners as a complaint stating the cause of action.

3. SAME—DIVERSE CITIZENSHIP—SEPARABLE CONTROVERSY.

In such a proceeding there is no separable controversy which will authorize a removal by some of the remonstrants, who are citizens of other states, for all the parties to the proceeding are inseparably interested in the main issue, namely, the right of the petitioners to have the drain established; to which issue the question as to the amount of benefits assessed to each remonstrant is merely incidental.

4. SAME—SEPARABLE CONTROVERSIES—SEPARATE DEFENSES.

There are no separable controversies within the meaning of the removal acts unless the case as made by the complaint embraces controversies which are separate. The cause of action is not made separable because one defendant sets up a separate defense, peculiar to himself, which may defeat the entire cause of action.

These were applications by the Tolleston Club of Chicago, James Stinson, the Michigan Central Railway Company, and John Gunzenhauser for leave to file in this court a transcript of certain proceedings had in the circuit court of Lake county, Ind., in relation to the establishment of a drain, and to docket the said proceeding herein as a removed cause.

J. Kopelke, for petitioners.

J. W. Youche, Winston & Meagher, and W. C. McMahon, contra.

BAKER, District Judge. On September 9, 1892, John F. Jarnecke and 72 others, owners of land in the county of Lake, in the state of Indiana, filed their petition in the circuit court of that county, alleging that a large amount of land in said county would be benefited by drainage, which could not be accomplished without affecting the

lands of others, who are named, with a description of the lands owned by them; that such drainage could be best effected in the manner particularly described in the petition; that the public health would be promoted, and public highways and the right of way of railroads would be benefited by such drainage, and that the same would be of public utility. Notice of the filing and pendency of the petition was given in the manner provided in the statute. On December 23, 1892, the court referred said petition and the matters therein contained to the commissioners of drainage of said county. On April 22, 1895, said commissioners filed their report, accompanied with a map and profile of said drain. On May 3, 1895, 27 landowners, parties to, and who would be affected by, said proposed drainage, filed their several remonstrances to said report. On the same day, and contemporaneously with the filing of said remonstrances, four of said remonstrants, to wit, the Tolleston Club of Chicago, James Stinson, the Michigan Central Railway Company, and John Gunzenhauser, filed their several petitions and bonds for the removal of said cause from the state court into this court. The state court found that the petitions for removal, which are substantially alike, were in due form, and that the bonds tendered therewith were sufficient, but refused to grant the prayer of either petition, for the reason that, in the opinion of the court, no removable controversy was shown to exist. A transcript of the proceedings in the state court has been presented here, and the petitioners for the removal now ask leave to file the same, and to have said cause docketed, to which the petitioners for the drain object.

The proceedings for the establishment and construction of a drain are purely statutory. The statute providing therefor depends for its validity on the power of eminent domain and the taxing power of the state. A drain cannot be established or constructed unless the work will promote the public health or conduce to public utility. The landowner can only be assessed for the accomplishment of this public purpose to the extent that his land will receive a special and particular benefit from the drain, as contradistinguished from the benefit to the general public. The drainage act in question (2 Burns' Rev. St. §§ 5622–5664, incl.) has been repeatedly considered by the supreme court of this state, and it has always been regarded as providing a special statutory proceeding for the establishment and construction of drains, kindred in character to statutes providing for the establishment and construction of gravel roads, streets, sewers, and other like public improvements. A commission is provided for, which determines the public utility of the drain, the extent of the district on which the assessments are to be laid, the amount of the benefits or injuries to each parcel of land situated therein, and how much each landowner shall pay or receive on account of such public improvement. In the case of Hays v. Tippy, 91 Ind., 102, 106, the court, in construing the drainage act in question, held that a drainage proceeding was not a civil suit or action. The court said:

"This proceeding is not, in any proper sense, a civil action or a civil case. It is a special proceeding, authorized by the general assembly for the express

purpose of promoting public health or improving public highways. Throughout the entire statute it is manifest that the legislature did not intend that such a proceeding should be subjected to any of the delays ordinarily incident to the trial of a civil cause."

The court further said that it was clear that the provisions of the statute governing proceedings in civil suits did not apply to proceedings under the drainage act. The doctrine of this case has been reaffirmed and applied in later cases. Dukes v. Working, 93 Ind. 501, 503; Anderson v. Caldwell, 91 Ind. 451, 454; Crume v. Wilson, 104 Ind. 583, 587, 4 N. E. 169. But the legislature of a state cannot, by making special provisions for the trial of particular controversies, nor by declaring such controversies to be special proceedings and not civil suits at law or in equity, deprive the federal courts of jurisdiction nor prevent a removal. A state legislature, if the constitution of the state does not forbid it, may provide for the trial of any cause in some special way unknown to the methods of procedure at law or in equity. But, whatever the method of procedure, it would be none the less a trial if conducted by a tribunal having power to determine questions of law and fact; and, if the subject-matter constituted a controversy involving the legal or equitable rights of parties, it might be cognizable in the courts of the United States. Unless this were so, the only thing the legislature of a state would have to do to entirely destroy the jurisdiction of the federal courts and the right of removal would be to abolish all suits at law and in equity, and substitute special statutory methods of procedure. Neither the legislature nor the courts of a state have the power, by giving new names to legal proceedings, to change their essential character. Courts will look beyond forms to the substance, and from it determine whether the controversy, in its essential nature, is a suit at law or in equity, as understood by the courts of the United States. Railway Co. v. Jones, 29 Fed. 193, 196. From these considerations it follows that the decisions of the supreme court of the state are not controlling on the question now before the court.

Section 5623 of the statute provides that, after taking certain preliminary steps, "the commissioners shall proceed and definitely determine the best and cheapest method of drainage, * * * estimate the cost thereof, divide the drain or ditch into sections, * * * and compute and set out the number of cubic yards of excavation in each section and assess the benefits or injury, as the case may be, to each separate tract of land to be affected thereby." The statute further provides that any landowner may remonstrate, and that, after the remonstrances have been filed, all questions arising on the petition, report, remonstrance, or remonstrances shall be tried by the court. The court may modify or equalize the assessments as justice may require, by diminishing the assessments on one or more tracts and by increasing them on others, or by giving or withholding damages; and for such purposes all persons whose lands are reported to be affected * * * shall be deemed to be in court," and the court may, if the facts shall justify it, make assessments against the same; and as such assessments are so changed, modified, or

equalized or made, they shall stand, and be adjudged valid. The statute further provides that the county commissioner or other person charged with the execution of the work shall pay all damages that have been assessed or laid by the court, and the cost of the construction of the work; and it is further provided that the assessment shall be a lien on each separate piece of property on which the same is assessed, and that such liens shall be deemed to exist from the date of the filing of the report of the commissioner. The report of the commissioner constitutes the complaint to which the remonstrances are addressed. The findings contained in the report may be put in issue by any remonstrant who may allege that the drain will not promote the public health or be of public utility, or that the drainage proposed is not practicable, or that the work cannot be accomplished for the aggregate amount of the benefits, or that the lands of the remonstrant are assessed too high as compared with the assessment on the lands of others. Each remonstrant has the right to have such issues as are presented by his remonstrance tried by the state court without a jury. And it is further provided that if the court find that the proposed drainage will not promote the public health, or be of public utility, or that the drainage is not practicable, or that it will cost more than the aggregate amount of the benefits, the proceedings shall be dismissed.

The proceeding contemplates the taking of lands for the drain and its embankments, and the proportionate assessment of the benefits upon all lands benefited by such drainage, and the collection of so much of such benefits as may be necessary to construct the drain. Do the appropriation and condemnation of lands whereon to construct the drain and the assessment of benefits upon the land benefited by its construction constitute a controversy of a civil nature at law or in equity, cognizable by the federal courts? It is clear that the proceedings had by and before the drainage commissioners do not constitute a controversy of a civil nature at law or in equity. When the report is filed in court it becomes a complaint, to which remonstrances may be addressed in the nature of pleas in bar, which will give rise to controversies which may result in defeating or modifying the report. The report states a cause of action against each landowner named therein. It states that each landowner will be benefited in a specified sum by a work which will promote the public health and be conducive to public utility. Each remonstrant is entitled, if he desires it, to have these questions tried in a suit or proceeding in which the petitioners are plaintiffs and the remonstrants are defendants. The questions of taking the lands of the remonstrants for the construction of the drain, and the amount of benefits which his lands will receive therefrom, are to be heard and decided by the state court as other suits are tried and decided; and either party, if aggrieved, may have an appeal from such judgment to the supreme court. These questions, at least, constitute a controversy of a civil nature. If several separate remonstrances present the same issues, the court may undoubtedly order them to be consolidated and tried together, but in such case the finding and judgment as to the amount of benefits or damages sustained by each land-

owner would have to be separate. Each remonstrant can introduce evidence, reserve exceptions, and take a separate appeal, if he so desires. As each remonstrant is entitled to file a separate remonstrance, and to have a separate trial thereof, in which the only parties actually concerned in the litigation are the petitioners as plaintiffs and himself as defendant, it is difficult to perceive why that controversy does not constitute a suit.

The case of City of Chicago v. Hutchinson, 11 Biss. 484, 487, 15 Fed. 129, was a proceeding under and by virtue of an ordinance of the city of Chicago to open Dearborn street through that city, and for that purpose some 200 lots, owned by 40 different persons, were sought to be condemned. The petition on the part of the city, which made all the landowners defendants, was filed in the county court of Cook county, Ill. The owner of one of the lots filed in that court her petition and bond for removal. The court sustained her right of removal. It was said that the condemnation of land for the street was an exercise of the right of eminent domain, and that this was an exercise of sovereignty residing exclusively in the state; but that, when the legislature made the exercise of this power dependent on questions of law and fact, to be ascertained and determined by a judicial tribunal, it gave rise to a controversy in the nature of a civil suit, so far, at least, as related to the determination of the value of the property to be condemned, and the amount of benefits to the remaining land created by opening the street. And it was held that these questions constituted a civil suit between the city on the one side and the lot owner on the other, and that it was a separable controversy, removable into the federal court. The case was subsequently re-argued before Judges Drummond and Blodgett, and the decision of Judge Drummond was affirmed, it being held that the proceeding was a civil suit, and that a separable controversy existed therein as between the city and the lot owner.

The same question came before the supreme court in the Pacific Railroad Removal Cases, 115 U. S. 2, 22, 5 Sup. Ct. 1113. One of these cases—the case of the Union Pacific Railroad Company v. City of Kansas—was a proceeding instituted by the common council of that city for the widening of a street through the depot grounds of the company, and thereby taking a portion of its grounds, and the property of many other persons. A jury was summoned before the mayor to inquire into the value of the property taken for the street, and to assess the amount upon the surrounding property benefited thereby. The jury found the value of the company's property taken to be $7,305, and assessed as benefits upon the remaining property the sum of $12,325. The verdict of the jury was confirmed by the mayor. The laws of Missouri gave to the party dissatisfied with the award of the jury in such cases an appeal to the circuit court of Jackson county, in which Kansas City is situated; and the Union Pacific Railroad Company and some other parties filed separate appeals. and the proceedings were certified to said court, where the appeals were by law directed to be tried "in all respects and subject to the same rules as other trials had in the circuit court, and the same record thereof made and kept." After the case was certified

to the circuit court of Jackson county, the company in due time filed its petition and bond for the removal of said cause into the circuit court of the United States for the Western district of Missouri. The court held that a separable controversy existed between the city and the company, which was removable into the federal court. It was observed that there were three distinct issues or grounds of controversy: First, the value of the property taken for the street; secondly, the amount of benefits which the widening of the street would create to its remaining property not so taken; and, thirdly, the right of the city to open the street at all across the depot grounds. It was held that these issues involved a controversy of a civil nature, cognizable by the courts of the United States; and that the controversy involving these issues was separate and distinct as between the city and the company. It was further said that in this view of the case there was no difficulty in removing the controversy between the city and the company for trial in the circuit court of the United States. It was said that the proceeding in the state court might have to await the determination of this controversy, and that the result of its determination might modify, or possibly defeat, the proceedings in the state court, but that this furnished no good reason for depriving the company of the right of removal. The present proceeding is one seeking to condemn land for the construction of a drain and to assess the benefits of such drainage on all other lands benefited thereby. The controversy between the petitioners and each remonstrant is whether the drain will promote the public health or be of public utility; whether the drainage is practicable, and can be accomplished for the aggregate amount of benefits; and whether the assessment of benefits to the lands of the remonstrant is too large. This controversy, if tried in the state court, is one triable by and between these parties, and possesses all the characteristics of a civil suit. The petition, report, and remonstrance represent controversies involving the several issues or questions above stated. The taking of land for a drain, and the fixing of a charge upon other lands for its construction, involve rights of property or claims thereto capable of pecuniary estimation, which are the subject of litigation presented by the petition, report, and remonstrances. Such litigation constitutes a suit within the meaning of the removal act. "The term 'suit,'" said Mr. Chief Justice Marshall in Weston v. City Council, 2 Pet. 449, 464, "is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice by which an individual pursues that remedy in a court of justice which the law affords him. The modes of proceeding may be various, but, if a right is litigated between the parties in a court of justice the proceeding by which the decision of the court is sought is a suit." And in Upshur Co. v. Rich, 135 U. S. 467–477, 10 Sup. Ct. 651, it is said:

"The principle to be deduced from these cases is that a proceeding not in a court of justice, but carried on by executive officers in the exercise of their proper functions, as in the valuation of property for the just distribution of taxes or assessments, is purely administrative in character, and cannot in any just sense be called a suit; and that an appeal in such a case to a board of assessors or commissioners having no judicial powers, and only authorized to

determine questions of quantity, proportion, and value, is not a suit, but that such an appeal may become a suit if made to a court or tribunal having power to determine questions of law and fact, either with or without a jury, and there are parties litigant to contest the case on one side or the other."

The controversy presented in the present case by the petition, report, and remonstrances is one to be tried by a state court of general jurisdiction clothed with the power to determine questions of law and fact; and there are parties litigant to contest the case on both sides. It seems difficult to withdraw the present controversy from the principle announced in Upshur County v. Rich, supra. From the time the report is filed in the state court, the proceeding becomes, in my opinion, a suit between the petitioners on the one side and all others who are made parties thereto by the report on the other side. As to such parties as do not remonstrate within 10 days, the report will be confirmed, subject, however, to the whole proceeding being defeated and dismissed, if upon the trial of any remonstrance to said report it shall be found and adjudged by the court that such drainage will not promote the public health, or be of public utility, or that its construction is not practicable, or that its cost will be in excess of the aggregate amount of benefits. The proceeding does not involve the mere exercise of the taxing power of the state. It is in the nature of the exercise of the power of eminent domain, and contemplates the taking of land whereon to construct the drain, as well as the assessment of benefits on the remaining lands, whereby to pay for its establishment and construction. In this particular it differs from a proceeding solely for the purpose of raising money by the exercise of the taxing power to aid in the construction of a public improvement. This differentiates the present case from that of In re City of Chicago, 64 Fed. 897, and other cases of like character, which hold that a proceeding solely for the purpose of raising money by the exercise of the taxing power for the construction of a public improvement is not a suit, although such proceedings may be conducted in a court of general jurisdiction. Without expressing any opinion on the doctrine of this class of cases, it seems to me that the existing controversy between these several remonstrants and the petitioners for the drain constitutes a suit between the latter on the one side and the remonstrants on the other. For these reasons I am of the opinion that the petition, report, and remonstrances present a controversy in the state court in the nature of a civil suit. Whether the controversy between the petitioners and each remonstrant is one wholly between citizens of different states, which can be fully determined as between them, can only be ascertained by a consideration of the nature of the controversy. The petition and report allege that the drain will promote the public health, and be of public utility; that its construction is practicable, and can be accomplished at a cost not in excess of the aggregate amount of benefits; and that the lands of each remonstrant will be benefited in the amount assessed upon them. These allegations are put in issue by the several remonstrants. All of these questions except the one relating to the amount of benefits concern every landowner named in the report alike. The interest of the remonstrants

in these questions is not different in kind, though it may be in extent, from that of the petitioners, and other parties who do not remonstrate.

Regarding the report, as we must, as a bill of complaint, does the fact that each petitioner for removal sets forth in his or its remonstrance and petition a separate defense thereto, make the controversy separable in the sense of the removal act? By section 1 of the acts of congress of March 3, 1875 (chapter 137), as amended by the acts of March 3, 1887 (chapter 373), and August 13, 1888 (chapter 866), it is enacted that the circuit courts of the United States shall have original cognizance concurrent with the courts of the several states of all suits of a civil nature at common law or in equity where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000, "and arising under the constitution or laws of the United States or treaties made or which shall be made under their authority; or in which the United States are plaintiffs or petitioners; or in which there shall be a controversy between citizens of different states; or a controversy between citizens of the same state claiming land under grants of different states; or a controversy between citizens of a state and a foreign state, citizens or subjects." And by section 2 the defendant's right to remove a suit, whether arising under the constitution, laws, or treaties of the United States, or coming within any other class above enumerated, from a state court into a circuit court of the United States, is restricted to suits of "which the circuit courts of the United States are given original jurisdiction by the preceding section." 25 Stat. 434. And by section 2 it is further provided that "when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the circuit court of the United States for the proper district."

The question whether there is a separable controversy authorizing its removal into this court must be determined by the state of the pleadings and the record at the time of the application for removal, and not by the allegations of the petition therefor, nor by the subsequent proceedings in the state court. Barney v. Latham, 103 U. S. 205. The petition for removal, and the report filed in the state court, and the relief sought for thereunder do not present a controversy which is wholly between citizens of different states, nor one which can be finally determined between the petitioners for the drain and the parties seeking a removal without the presence of other parties whose interests are directly involved in the controversy. The original petition and the report do not present several causes of action, some of which are against the resident defendants and others against the nonresident defendants, but embrace a single cause of action and a single ground of relief. Considering the character of the relief sought by the original petition and report, and the relation of the various parties to the same, it cannot be properly said that the whole subject-matter of the pro-

ceeding is capable of being fully and finally determined between the original petitioners on the one side and these four remonstrants on the other side without the presence of the other parties who have a direct and immediate interest in all the questions in controversy except that relating to the assessment of benefits on the lands of the remonstrants. Nor does the fact that some of the parties have not answered by remonstrance or otherwise place the remonstrants in any different position with reference to a removal than they would have occupied if those parties had filed remonstrances denying the allegations of the report. Putnam v. Ingraham, 114 U. S. 57–59, 5 Sup. Ct. 746; Wilson v. Oswego Tp., 151 U. S. 56, 14 Sup. Ct. 259.

The case of Rosenthal v. Coates, 148 U. S. 142, 147, 13 Sup. Ct. 576, was a suit in effect by the assignee to disincumber the fund in his possession of alleged liens. It was held that the fact that each defendant had a separate defense to his claim did not create a separable controversy as between him and the assignee; citing Insurance Co. v. Huntington, 117 U. S. 280, 6 Sup. Ct. 733; Graves v. Corbin, 132 U. S. 571, 586, 10 Sup. Ct. 196; and Young v. Parker, 132 U. S. 267, 10 Sup. Ct. 75. And it was observed that none of the defendants could create a separable controversy by setting up in his answer a claim for the payment of his debt out of the fund in the hands of the assignee. So in the present case the proceeding in the state court was one in effect by the original petitioners to procure the establishment and construction of a drain, and to charge upon all the lands benefited by its construction the amount of such benefits; and the fact that each remonstrant had a separate defense to this proceeding does not create a separable controversy by setting up that the proposed drain is not practicable, or is not of public utility, or that his assessment is too large as compared with the assessments of any or all other parties to the proceedings.

The case of Bellaire v. Railroad Co., 146 U. S. 117–119, 13 Sup. Ct. 16, was a suit by the city of Bellaire against the lessor and lessee of a parcel of land to condemn it for the purpose of extending a street. It was held that it could not be removed into a circuit court of the United States upon the ground of a separable controversy between the lessee and the plaintiff. "The object of the suit," it was said, "was to condemn and appropriate to the public use a single lot, and not (as in Union Pac. Ry. v. City of Kansas, 115 U. S. 2, 22, 5 Sup. Ct. 1113, cited by defendant) several lots of land, each owned by a different person. The cause of action alleged, and consequently the subject-matter of the controversy, was whether the whole lot should be condemned, and that controversy was not the less a single and entire one because the two defendants owned distinct interests in the land, and might be entitled to separate awards of damage;" citing Kohl v. U. S., 91 U. S. 367, 377, 378. And it was further said that the ascertaining of those interests and the assessment of those damages were but incidents to the controversy, and did not make that controversy separable, so that the right of either defendant could be fully determined by it-

self, apart from the right of the other defendant and from the main issue between both the defendants on the one side and the plaintiffs on the other.   So here the main controversy in which every landowner is concerned is whether the drain is of public utility, and whether its construction is practicable, and can be accomplished at a cost not in excess of the aggregate amount of benefits; and the assessment of benefits is but incidental thereto.

The case of Torrence v. Shedd, 144 U. S. 527, 530, 12 Sup. Ct. 726, was a suit in a state court for the partition of lands.   It was held that it could not be removed into a circuit court of the United States by reason of a controversy between the plaintiff and a citizen of another state intervening and claiming whatever might be set off to the plaintiff.   It was said:

"But, in order to justify such removal on the ground of a separate controversy between citizens of different states, there must, by the very terms of the statute, be a controversy which can be fully determined as between them; and by the settled construction of this section the whole subject-matter of the suit must be capable of being finally determined as between them, and complete relief afforded as to the separate cause of action, without the presence of others originally made parties to the suit. Hyde v. Ruble, 104 U. S. 407; Corbin v. Van Brunt, 105 U. S. 576; Fraser v. Jennison, 106 U. S. 191, 1 Sup. Ct. 171; Winchester v. Loyd, 108 U. S. 130, 2 Sup. Ct. 311; Shainwald v. Lewis, 108 U. S. 158, 2 Sup. Ct. 385; Ayres v. Wiswall, 112 U. S. 187, 5 Sup. Ct. 90; Insurance Co. v. Huntington, 117 U. S. 280, 6 Sup. Ct. 733; Graves v. Corbin, 132 U. S. 571, 10 Sup. Ct. 196; Brown v. Trousdale, 138 U. S. 389, 11 Sup. Ct. 308. As this court has repeatedly affirmed, not only in cases of joint contracts, but in actions for torts which might have been brought against all or against any one of the defendants, separate answers by the several defendants sued on joint causes of action may present different questions for determination, but they do not necessarily divide the suit into separate controversies.   A defendant has no right to say that an action shall be several which a plaintiff elects to be joint.   A separate defense may defeat a joint recovery, but it cannot deprive a plaintiff of his right to prosecute his own suit to final determination in his own way.   The cause of action is the subject-matter of the controversy, and that is for all the purposes of the suit, whatever the plaintiff declares it to be in his pleadings. Railroad Co. v. Ide, 114 U. S. 52, 56, 5 Sup. Ct. 735; Pirie v. Tvedt, 115 U. S. 41, 43, 5 Sup. Ct. 1034, 1161; Sloane v. Anderson, 117 U. S. 275, 6 Sup. Ct. 730; Little v. Giles, 118 U. S. 596, 601, 602, 7 Sup. Ct. 32; Hedge Co. v. Fuller, 122 U. S. 535, 7 Sup. Ct. 1265."

The case of Shainwald v. Lewis, 108 U. S. 158, 2 Sup. Ct. 385, was a suit by one partner for a settlement of partnership affairs, in which a judgment creditor of the defendant and a receiver appointed in a suit upon the judgment were admitted as defendants; and it was held that there was no separable controversy between them and the plaintiff which would entitle them to remove the suit; the court saying:

"The suit was brought to close up the affairs of an alleged partnership. The main dispute was about the existence of a partnership. All the other questions in the case are dependent on that. If the partnership is established, the rights of the defendant are to be settled in one way; if not, in another. There is no controversy in the case now which can be separated and be fully determined by itself."

So in the present case there is now no controversy which can be separated from that touching the practicability and utility of the drain and be fully determined by itself.

The case of Little v. Giles, 118 U. S. 596, 600, 601, 7 Sup. Ct. 32, was a suit in which the bill charged the defendants jointly with having defrauded the plaintiff of her property. The defendants denied the fraud, and set up separate defenses. Mr. Justice Bradley, delivering the opinion of the court, said that one of the defendants "could not, by merely making contrary averments in his petition for removal, and setting up a case inconsistent with the allegations of the bill, segregate himself from the other defendants, and thus entitle himself to remove the case into the United States court." So in Railroad Co. v. Grayson, 119 U. S. 240, 244, 7 Sup. Ct. 190, which was a suit in equity against two corporations, the question was whether there was a separable controversy between one of them and the plaintiff which would warrant a removal into the federal court; and it was said by Mr. Chief Justice Waite, who delivered the opinion of the court, that the allegations of the bill must, for the purposes of the inquiry, be taken as confessed.

The case of Railroad Co. v. Wangelin, 132 U. S. 599–603, 10 Sup. Ct. 203, was an action at law charging two corespondents with having jointly trespassed on the plaintiff's land. The defendant, seeking a removal on the ground of a separable controversy, set up that its codefendant did not have a corporate existence, and that the alleged trespass had been committed by it alone; but the court, denying the right of removal, observed that whether they had committed the alleged joint trespass was a question to be decided at the trial; and that, as the cause of action disclosed by the declaration did not show a separable controversy, the removal was wrongful, and the order remanding the cause to the state court was affirmed.

The case of Insurance Co. v. Huntington, 117 U. S. 280, 6 Sup. Ct. 733, was a creditor's bill to subject incumbered property to the payment of the judgment of the creditor by selling it and distributing its proceeds among lienholders according to priority. It was held that no separable controversy existed within the meaning of the removal act, although the defenses of the several defendants were separate and distinct. The court said:

"The suit, as brought by Huntington, is a creditor's bill to subject incumbered property to the payment of his judgment by a sale and distribution of the proceeds among the lienholders according to their respective priorities. There is but a single cause of action, and that is the equitable execution of a judgment against the property of the judgment debtor. The cause of action is not divisible. Each of the defendants may have a separate defense to the action, but we have held many times that separate defenses do not create separate controversies within the meaning of the removal act."

It was further observed that the judgment sought against the Fidelity Company was incidental to the main purpose of the suit, and the fact that this incident related alone to that company did not separate this part of the controversy from the rest of the action. These cases establish the doctrine that, unless the case made by the complaint embraces separable controversies, there can be no removal; that a cause of action is not made separable and removable because the defendant sets up a separate defense peculiar to himself which may defeat the entire cause of action. In the present case the main and primary question is the right of the petitioners to estab-

lish the drain, and this presents a single and entire controversy, in which all the landowners are equally interested. The assessment of benefits and damages is merely incidental to the main, and, for the purpose of removal, the indivisible, issues tendered by the original petition and report. Whether a removal could be had if the sole issue presented by the remonstrants was the amount of the assessments, it is not necessary to determine. But see Brooks v. Clark, 119 U. S. 502, 7 Sup. Ct. 301. Tested by the principle established in these cases, it is manifest that neither the original petition nor the report discloses any such separable controversy wholly between the petitioners for removal on the one side and the original petitioners for the drain on the other as will warrant a removal.

Leave to file the transcript and docket the cause is denied at the cost of the petitioners for removal, and the transcript is ordered to be transmitted to the circuit court of Lake county, Ind.