In re SILVIES RIVER.

(District Court, D. Oregon. October 7, 1912.)

No. 5,704.

1. REMOVAL OF CAUSES (§ 4*)—PROCEEDINGS SUBJECT TO REMOVAL—"SUITS AT COMMON LAW AND IN EQUITY."

The phrase, "suits at common law and in equity," as used in Judicial Code (Act March 3, 1911, c. 231. 36 Stat. 1094 [U. S. Comp. St. Supp. 1911, p. 140]) § 28, providing for the removal of causes, embraces not only ordinary actions and suits, but includes all the proceedings in the ordinary law and equity tribunals, as distinguished from proceedings in military, admiralty, and ecclesiastical courts, but does not include a proceeding before the board of control of the state of Oregon on a petition by the users of the water in a stream for an investigation to determine the rights of appropriators as authorized by Laws Or. 1909, p. 319, in any event, not during the preliminary proceedings before the board and prior to an appeal to the courts, such proceeding being one in the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nature of a hearing before executive or administrative officers in the exercise of their functions to regulate and control the use of state waters.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 11–20; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 7, p. 6778.]

2. REMOVAL OF CAUSES (§ 57*)—PARTIES—CITIZENSHIP—"SEPARABLE CONTROVERSY."

Under Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1094 [U. S. Comp. St. Supp. 1911, p. 140]) § 28, authorizing removal of certain causes to federal courts where there is a controversy wholly between citizens of different states which can be fully determined as between them notwithstanding the presence of other parties, a separable controversy does not exist so as to authorize removal, unless the whole subject-matter of the suit is capable of being fully determined as between citizens of different states, and complete relief afforded as to the separate cause of action without the presence of others originally made parties.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 109; Dec. Dig. § 57.*

For other definitions, see Words and Phrases, vol. 7, p. 6412.

Removal of causes, separable controversy, see notes to Robbins v. Ellenbogen, 18 C. C. A. 86; Mecke v. Valleytown Mineral Co., 35 C. C. A. 155; Pollitz v. Wabash R. Co., 100 C. C. A. 4.]

3. REMOVAL OF CAUSES (§ 57*)—SEPARABLE CONTROVERSY—DETERMINATION—PARTIES.

Where in proceedings before the state board of control to determine water rights with reference to a river in Oregon, as authorized by Laws Or. 1909, p. 319, against both citizens and noncitizens claiming rights to water, each of the claimants was directly interested, not only in establishing the validity and extent of his own claim, but also in the correct determination of all the other claims the proceeding did not involve a separable controversy between petitioners and a citizen of another state, so as to authorize the latter to remove the proceeding as between it and petitioners to the federal court under Judicial Code, § 28.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 109; Dec. Dig. § 57.*]

4. REMOVAL OF CAUSES (§ 41*)—NATURE OF PROCEEDING—PARTIES—STATE—"CITIZEN."

A proceeding before the state board of control to determine water rights in a river as between various claimants under authority conferred by Laws Or. 1909, p. 319, is, in effect, a proceeding on behalf of the state, through an administrative or executive board, to have the rights of the various claimants determined, and the state, which is not a "citizen" within the removal statutes, being, in effect, a party to the proceeding, it was not removable to the federal court under Judicial Code, § 28.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 82½–84; Dec. Dig. § 41.*

For other definitions, see Words and Phrases, vol. 2, pp. 1164–1174; vol. 8, pp. 7602, 7603.]

In Equity. In the matter of the determination of the relative rights to the waters of the Silvies river and its tributaries. An alleged separable controversy between petitioners and the Pacific Live Stock Company having been removed to the federal courts, the Attorney General of Oregon, in his official capacity, and as representing the petitioners and other claimants, moved to remand. Motion granted.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

A. M. Crawford, Atty. Gen., of Salem, Or., for petitioners.

Edward F. Treadwell, of San Francisco, Cal., and John L. Rand, of Baker, Or., for Live Stock Co.

BEAN, District Judge. In February, 1909, the Legislature of Oregon passed an act for the regulation, control, distribution, use, and determination of the existing rights to the use of the waters within the state. Laws 1909, p. 319. It divides the state into two water divisions, provides for election of a state engineer and a superintendent for each division, authorizes the creation of the necessary number of water districts, and the appointment of a water master for each district. All applications for the use of the unappropriated waters of the state are to be made to and approved by the state engineer. It is the duty of the water master to divide the water of the natural streams or other sources of supply in his district among the several ditches and reservoirs according to their respective rights, and in general to supervise and control the use and distribution thereof, subject to the general supervision of the superintendent and the board of control. The division superintendent is given general control over the water masters and the execution of the laws relating to the distribution of water within his division with authority to make such reasonable regulations to secure the equal and fair distribution thereof in accordance with the determined rights as may be needed, not inconsistent with the laws of the state. His actions are subject to appeal to the board of control. The state engineer and the two division superintendents constitute a board of control, and, under such regulations as may be prescribed by law, are given supervision over the application, distribution, and division of the waters of the state and the several officers concerned therewith. The decisions of the board are subject to appeal to the courts. Whenever a petition signed by one or more users of water on a stream is filed with the board of control, requesting the determination of the relative rights of the various claimants to the waters of such stream, it is made the duty of the board, if upon investigation it finds the facts and conditions such as to justify, to make a determination of such rights and to fix a time for the beginning of the taking of testimony and the making of such examination as will enable it to determine the rights of the various claimants. And, in case suit is brought for the adjudication of the right to the use of the water in any of the circuit courts of the state, it may be, in the discretion of the court, transferred to the board for consideration as in the act provided. In case the board concludes to proceed with the determination of the rights of various claimants to water on any stream, it is required to give notice by publication of the date when the state engineer will begin investigating the flow of the stream and the ditches diverting water therefrom, and the time and place where the division superintendent will begin the taking of testimony. Service of such notice is required to be made by registered mail on each person, firm, or corporation claiming a right to use any of the waters of the stream, or owning or being in possession of lands bordering on or having access thereto, in so far as they can reasonably be ascer-

tained, which notice must be mailed at least 30 days prior to the date of the making of the examination and the taking of testimony. There must be inclosed with each notice, sent by registered mail, a blank form on which the claimant or owner is required to state in writing the particulars necessary for the determination of his rights to the water to which he lays claim, including his name and address, the nature of the right or use on which the claim is based, the time of its initiation or the commencement of such use, and, if distributing works are required, the date of beginning the construction, when completed, the date of beginning and completion of enlargements, dimensions of the ditch as originally constructed and as enlarged, date when water was first used for irrigation or other beneficial purposes, and, if used for irrigation, the amount of land reclaimed the first and subsequent years, with the dates of reclamation, the amount and general location of the land such ditch is intended to irrigate, the character of the soil, the kinds of crops cultivated, and such other facts as will show compliance with the laws in acquiring the right. This statement is required to be verified and any claimant served with notice who fails to appear and submit proof of his claim as required shall be barred from subsequently asserting any rights theretofore acquired. At the time fixed in the notice, the state engineer or his assistant is to make an examination of the stream and the works diverting water therefrom, which examination is to include the measurement of the discharge of the stream, the carrying capacity of the various ditches and canals, an approximate measurement of the land irrigated or susceptible of irrigation from the various ditches and canals, and such other data and information as may be essential to the proper understanding of the relative rights of the parties interested. These observations and measurements are to be reduced to writing and made a matter of record in the office of the state engineer, and it shall be his duty to make or cause to be made a map or plat on a scale of not less than one inch to the mile showing with substantial accuracy the course of the stream, the location of each ditch or canal diverting water therefrom, the legal subdivisions of lands which have been irrigated or which are susceptible of irrigation from the ditches and canals already constructed. At the date named in the notice, the division superintendent is required to commence taking testimony and continue the same until it is completed, when he shall give notice by registered mail to the various claimants that at a time and place named all of the evidence shall be open for inspection for a specified length of time by the various claimants and owners. Any claimant desiring to contest any of the rights of any person, corporation, or association which has submitted its evidence may within five days after the expiration of the time fixed in the notice for the public inspection of the evidence notify the superintendent in writing the grounds of his proposed contest, and the superintendent is thereupon required to fix a time for the hearing of such contest before him, and to cause notice to be served upon interested parties. He may adjourn the hearing from

time to time, and is authorized to issue subpœnas to compel the attendance of witnesses to testify in such matters. After the evidence has all been taken, the superintendent is required to transmit the same to the office of the board of control, and, as soon as practicable after the necessary data has been compiled by the state engineer and the evidence filed, it is made the duty of the board to cause to be entered of record in its office an order determining and establishing the several rights to the waters of the stream, and to transmit the original evidence and a certified copy of its determination to the clerk of the circuit court of the county in which said stream or some part thereof is situated, and to procure an order from the circuit court or the judge thereof fixing a time at which the matter will be heard by the court, and thereafter the proceedings in the circuit court shall be as nearly as may be like that in a suit in equity, except that it may be heard and decided and a decree entered in vacation. Within 30 days after the filing of the evidence and the findings of the board in the circuit court, or within such further time as the court may allow, any person may file exceptions to the findings of the board, but, if no exceptions are filed, the court is to enter a decree affirming such findings. All parties are entitled to be heard by counsel on the consideration of the exceptions to the findings of the board, and the court may, if necessary, remand the matter for further evidence or consideration by the board. Pending the consideration of the matter by the court, the findings of the board shall be in force and effect, unless stayed by the giving of a bond as provided in the act. Immediately upon the entering of a decree by the circuit court, the clerk of such court is required to transmit a copy thereof to the board of control, and it is the duty of the state engineer to forthwith issue the necessary instructions to the water superintendent and masters for its enforcement.

Within six months from the date of the decree, or if appealed from, within six months from the decision of the Supreme Court, the board of control or any party interested may apply to the circuit court for a rehearing.

The determination of the board of control as confirmed or modified by the court is made conclusive as to all prior rights and the right of all existing claimants upon the stream or body of water lawfully embraced in such determination, and it is made the duty of the secretary of the board to issue to each person, corporation, or association represented in such determination a certificate signed by the president of the board and attested by its seal, setting forth its rights as so determined, and such certificate is entitled to record in the office of the county clerk of the proper county.

In November, 1911, R. R. Sitz, Fred Otley, and M. B. Hayes filed a petition with the state board of control, stating that they were users of the waters on Silvies river and its tributaries, and requesting a determination of the relative rights of the several claimants to such waters. The board thereupon made an order granting the petition and fixing a day when the state engineer

would make the examination and survey of the streams, and the division superintendent would commence the taking of testimony. Notice in the manner required by law was given to the several claimants, more than 200 in number, all of whom except the Pacific Live Stock Company and one other are citizens and residents of Oregon. Within the time fixed in the notice, the Pacific Live Stock Company filed a petition with the board, accompanied by a bond, for a removal of the matter to this court. Its petition sets out the proceedings theretofore had before the board of control, alleges that Sitz, Otley, and Hayes were at the time of the filing of their petition with the board and for many years prior thereto and ever since have been and now are residents of the state of Oregon, and are citizens and inhabitants of such state, and that the Live Stock Company is a citizen and resident of the state of California; that the controversy between Sitz, Otley, and Hayes and the Live Stock Company is wholly between citizens of different states which can be fully determined as between them, and in this behalf it is averred that the Live Stock Company claims to have heretofore taken and appropriated a large amount of the waters of Silvies river and its tributaries and applied the same to beneficial uses; that Sitz, Otley, and Hayes likewise claim that they have appropriated and taken from the river certain waters and applied the same to beneficial use; that the Live Stock Company claims that its appropriation was prior in time and in right to that of Sitz, Otley, and Hayes; that they deny the appropriation by the company of the amount of water which it claims to have appropriated, and deny that such appropriation was prior in time and prior in right to them, and deny that the controversy involves the extent of the appropriation by the Live Stock Company on the one hand and by Sitz, Otley, and Hayes on the other, and the relative priority thereof in point of time and therefore in point of right, and deny that such controversy is a severable one between the Live Stock Company and Sitz, Otley, and Hayes, and can be fully determined as between them, and, exclusive of interest and costs, exceeds in value the sum of $3,000.

The Attorney General of the state in his official capacity and as representing Sitz, Otley, and Hayes and all the other claimants to whom notice has been sent except the Live Stock Company moves to remand the cause to the state board of control on the ground (1) that the proceeding before the board was not at the time the petition for removal was filed a suit of a civil nature at common law or in equity within the meaning of the federal statutes, because the board is essentially an administrative and not a judicial body; (2) that the Live Stock Company and Sitz, Otley, and Hayes are not the only parties whose rights are involved in the controversy, and that such controversy cannot be fully determined as between them, and complete relief afforded without the presence of all the other claimants to the water; and (3) the proceeding sought to be remanded is in effect one instituted by the state for a judicial determination of the rights of the various claimants to

the waters of Silvies river, and is, in effect, a suit brought by the state in its sovereign capacity for that purpose and therefore not removable.

[1] Section 24 of the Judicial Code provides that the District Courts of the United States shall have original jurisdiction "of all suits of a civil nature at common law or in equity * * * between citizens of different states," where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and section 28 that suits of which the District Court is given jurisdiction by this title and "which are now pending or which may hereafter be brought in any state court may be removed into the District Court of the United States for the proper district by the defendant or defendants, being nonresidents of that state. And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit to the District Court of the United States for the proper district." The phrase "suits at common law and in equity" embraces not only ordinary actions and suits, but includes all the proceedings carried on in the ordinary law and equity tribunals as distinguished from proceedings in military, admiralty, and ecclesiastical courts. It is a very comprehensive term, and is understood to apply to any proceedings in a court of justice by which an individual pursues a remedy which the law affords. Modes of proceeding may vary, but as it affects the right of removal any civil proceeding in a state tribunal in which a judgment or decree is sought as to the rights of the parties and presented by the pleadings for judicial determination is an action or suit within the meaning of the statute, regardless of the forum or tribunal before which the matter is pending. Weston v. City Council of Charleston, 2 Peters, 449-464, 7 L. Ed. 481; Gaines v. Fuentes, 92 U. S. 10, 23 L. Ed. 524. And the state cannot, by creating special proceedings or special tribunals, deprive the federal court of jurisdiction of such a suit or prevent a removal. In re The Jarnecke Ditch (C. C.) 69 Fed. 161. But a proceeding carried on by or before executive or administrative officers in the exercise of their proper functions cannot be regarded as a suit or action, although it may become such on appeal to a court having power to determine questions of law and fact either with or without a jury, and where there are parties litigant to contest the case on one side or the other. Upshur Co. v. Rich, 135 U. S. 467, 10 Sup. Ct. 651, 34 L. Ed. 196; Waha-Lewiston L. & W. Co. v. Lewiston Sweetwater I. Co. (C. C.) 158 Fed. 137.

Now the preliminary proceedings before the state board of control, in taking testimony and making findings of fact concerning the rights of the various claimants to the waters of a given stream, are, in my judgment, not judicial, but rather administrative. The powers of the board are not brought into action by the filing of a paper in the nature of a complaint setting up asserted rights, but

by the mere presentation to it of a petition or request by one or more users of the water without any allegations of issuable facts, other than that the petitioner is a water user on the stream, and a request for the determination of the relative rights of the various claimants to such waters. No affirmative relief is asked and no adverse pleadings are required or permitted, or issues joined until after the evidence taken by the board is open to the inspection of the various claimants and owners. After the filing of the petition, the proceedings are to be conducted by the board and upon its initiative. Neither the petitioner nor the claimants obtain any redress for an injury as the result of such proceedings, but merely evidence of their title or right to the use of the water. It is true the board is vested with power to issue notice to the various claimants requiring them to present their claims, to take testimony and make findings of fact, but these findings must be confirmed by the court. The board has no power to make an adjudication of the rights of the claimants. Its duty is to ascertain the facts and present them to the court for its consideration. After the evidence and determination of the board has been filed with the court, the proceeding probably becomes a suit or action, but, until the board has completed its examination, made its determination, and filed its report, the proceedings are purely administrative.

In so far as the board has jurisdiction over the adjudication of water rights, it is in effect a standing examiner, created by the state, charged with the duty, when requested by the users of water, of examining into and reporting to the court the facts on which the rights of the various claimants are based, so that such rights may be authoritatively settled and determined by a judicial tribunal. Until the report is made and filed with the court, there is no action or suit within the meaning of the removable statute.

[2] Again, a suit or action is not removable unless the controversy is one "wholly between citizens of different states which can be fully determined as between them." The settled rule of construction of this provision is that the whole subject-matter of the suit must be capable of being fully determined as between citizens of different states, and complete relief afforded as to the separate cause of action without the presence of others originally made parties to the suit. Fraser v. Jennison, 106 U. S. 191, 1 Sup. Ct. 171, 27 L. Ed. 131; Hyde v. Ruble, 104 U. S. 407, 26 L. Ed. 823.

[3] The proceeding in question in my opinion is not of this character. Its purpose is to have determined the rights of all the claimants to the waters of Silvies river. The controversy is not alone between the parties who invoked the powers of the board and the Live Stock Company nor can it be decided without the presence of the other claimants. The water is the res or subject-matter of the controversy. It is to be divided among the several claimants according to their respective rights. Each claimant is therefore directly and vitally interested, not only in establishing the validity and extent of his own claim, but in having determined

all of the other claims. The proceeding is essentially a suit for the partition of the waters of the stream among the respective owners, and as such is not removable to this court. Torrence v. Shedd, 144 U. S. 527, 12 Sup. Ct. 726, 36 L. Ed. 528. It is not analogous to a suit to determine an adverse claim to real estate or to remove a cloud therefrom. It is a case where divers and sundry parties are entitled to use so much of the waters of a stream as they have put to beneficial use and the purpose is to ascertain their respective rights by a simple, economical, effective, and comprehensive proceeding, and is not a separable controversy between different claimants.

It seems to me, therefore, the motion to remand is well taken on the ground that the proceeding at the time the petition for removal was filed was not an action at law or suit in equity within the meaning of the statute, and the controversy is not wholly between the petitioners and the Live Stock Company, and is therefore not separable.

[4] I am also impressed with the soundness of the view that a proceeding for the adjudication and determination of the rights to the use of the waters within the state, instituted and conducted as provided in the legislative act of 1909, is in effect a proceeding on behalf of the state through an administrative or executive board to have judicially settled in an economical and practical way the rights of various claimants to the use of the waters of a stream or source of supply, and thus avoid the uncertainty as to water titles and the long and vexatious controversies concerning the same which have heretofore greatly retarded the material development of the state. If it is an action by a state, no removal can be had into this court on the ground of diversity of citizenship, because the state is not a citizen within the meaning of the removal statute. State of Indiana v. Alleghany Oil Co. (C. C.) 85 Fed. 871, and authorities cited. If, however, I am at fault in the view expressed, there is manifestly such a doubt on the subject as to make it the duty of the court to remand the cause to the state board of control in compliance with the established rule that, where there is a substantial doubt as to the right of this court to retain jurisdiction of a cause removed from a state tribunal, such doubt must be resolved against the jurisdiction here and in favor of the state tribunal. Fitzgerald v. Mo. Pac. Ry. (C. C.) 45 Fed. 812; Plant v. Harrison (C. C.) 101 Fed. 307; Wrightsville Hdw. Co. v. Colwell (C. C.) 180 Fed. 589.

Motion to remand is therefore allowed.